IGNATZ GOLDMAN, Respondent, v. MARCUS A. WOLFF ET AL., Appellants.

### February 4, 1879.

1. Courts will not give a meaning to a contract repugnant to that which the acts of the parties have given it, where the letter of the contract is not repugnant to such meaning. ..

2. Because of the difficulty in computing the damages caused by a breach of contract the party who has committed the breach is not to be allowed to escape with nominal damages.

3. Where, by the contract, plaintiff was to receive a percentage of the gross receipts for three years, the measure of damages for a breach of the contract is such sum as plaintiff would have made as his share of the contract

during the three years, less what he might have reasonably earned during that time; and in estimating this amount, the sales made since the contract may be taken into consideration, with other evidence showing probability of increase or decrease of business by fluctuation of trade or other causes.

4. Where counsel stated in argument to the jury that a verdict for a certain amount had been rendered in the cause upon a former trial, and, on being rebuked by the court, apologized by saying, "This is a matter of record," and the court refused to grant a new trial, *held*, that this was not sufficient ground for reversal.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CLINE, JAMISON & DAY, for appellants: It is only where there are proper *data* for calculation that damages can be recovered in an action on a contract. — *Nightingale* v. *Caswell*, 18 Cal. 315 ; *Forrest* v. *Caldwell*, 5 La. An. 220 ; *Masterton* v. *Mayor, etc.*, 7 Hill, 61 ; *Griffin* v. *Colver*, 16 N. Y. 489. There was no mutuality in the contract here sued on. The defendants were not bound to furnish any employment to the plaintiff, and the petition does not contain the assignment of a breach. The fact alleged, that the defendants discharged plaintiff, does not constitute a breach of the contract. — *Williamson* v. *Taylor*, Dav. & Mer. 389 ; *Dunn* v. *Sayles*, 8 Jur. 358 ; *Lees* v. *Whitcomb*, 5 Bing. 34 ; Smith's M. & S. 49 ; Schouler's Dom. Rel. 618. " Courts of law cannot incorporate into an instrument what the parties left out of it, even though the omission was occasioned by the clearest mistake ; nor can they reject what the parties inserted, unless it be repugnant to some other part of the same instrument."— *Sheets* v. *Selden*, 7 Wall. 423 ; *Canal Co.* v. *Coal Co.*, 8 Wall. 290 ; *Maryland* v. *Railroad Co.*, 22 Wall. 112 ; *Nichol* v. *Goetts*, 10 Exch. 194 ; *Besant* v. *Cross*, 10 C. B. 895 ; 15 Jur. 828. The action of counsel in stating that a verdict for a certain sum had formerly been rendered in the same case, is ground for a new trial, or for a reversal in the appellate court. — *Tucker* v. *Henniker*, 41 N. H. 319 ; *Berry* v. *The State*, 10 Ga. 523 ; *Mitchum* v. *The State*, 11 Ga. 615 ; *Gould* v.

*Moore*, 40 N. Y. Sup. C. 396 ; *Koelges* v. *Insurance Co.*, 57 N. Y. 638 ; *Crandall* v. *The People*, 2 Lans. 312 ; *Martin* v. *Orndorff*, 22 Iowa, 504 ; *Rolfe* v. *Rumford*, 66 Me. 464 ; *Baldwin's Appeal*, 44 Conn. 37.

R. E. ROMBAUER, for respondent : Where it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. — *Lewis* v. *Insurance Co.*, 61 Mo. 534 ; *Hammer* v. *Breidenbach*, 31 Mo. 53. The acts of the parties under a contract can always be looked to in aid of its interpretation, and furnish often the best guide to ascertain their intention. — *St. Louis Gas-Light Co.* v. *City of St. Louis*, 46 Mo. 121 ; *Patterson* v. *Camden*, 25 Mo. 13 ; *Whitehead* v. *Bank*, 2 Watts & S. 175. In an action for breach of contract for personal services, the contract-price is the measure of damages. — *Pond* v. *Wyman*, 15 Mo. 176 ; *Nearns* v. *Harbert*, 25 Mo. 352 ; *Steinberg* v. *Gebhardt*, 41 Mo. 519. And the mere fact that there is an inherent difficulty in the contract itself, to ascertain accurately such damages, does not affect the rule. — *Burrell* v. *Saginaw, etc., Co.*, 14 Mich. 34 ; *Alfaro* v. *Davidson*, 40 N. Y. Sup. Ct. 88. Even profits can be recovered in an action for breach of contract, where such profits are the proximate loss resulting from the breach, and were in contemplation of the parties when the contract was entered into. — *Masterton* v. *Mayor, etc.*, 7 Hill, 62 ; *Hoy* v. *Gronoble*, 34 Pa. St. 9 ; *Railroad Co.* v. *Howard*, 13 How. 307 ; *Cook* v. *Commissioners*, 6 McLean, 615, 616 ; *Fox* v. *Harding*, 7 Cush. 522.

HAYDEN, J., delivered the opinion of the court.

This is an action to recover damages for breach of a written contract between the plaintiff, as party of the second part, and the defendants, of the first part, the material por-

tion of which is as follows : " The said party of the second part agrees to manufacture at the distillery of Bevis & Company, corner of Barton and De Kalb Streets, St. Louis, Mo., for the parties of the first part, what is known as Hungarian yeast (compressed) ; the parties of the first part agreeing to pay the party of the second part for his service twenty per cent (20 per cent) of gross cash receipts from the sale of said yeast. The said Goldman, in consideration of the above interest, further agrees and binds himself to give all his entire time and attention to the manufacture of said yeast ; and further, that the said Goldman will not assist any other party or parties in the manufacture of said yeast as long as this contract shall be in force. This contract shall be in force for the term of three years from and after the first day of April, 1877, and said Goldman shall receive, between the first and fifth of every month, his twenty per centum of gross cash receipts of the month previous."

The petition alleges that the defendants, on March 17, 1877, when the contract was made, owned and operated a distillery of large dimensions and capacity, where they manufactured yeast ; that in consideration of the fact that the plaintiff would give his entire time and attention to the manufacture of compressed yeast for three years after the first day of April, 1877, at the distillery, and would manufacture a merchantable article, they agreed by the contract to continue the manufacture of such compressed yeast during the three years, they to furnish the necessary material and to use reasonable efforts to dispose of the yeast by sale ; that they would pay plaintiff twenty per cent of the gross cash receipts arising from the sale of the yeast during such periods, in monthly instalments.

The petition alleges that the plaintiff performed his obligations under the contract, and is still ready to do so ; but that the defendants, on the fourth day of July, 1877, discharged him, and have since prevented him from going on with his contract, etc. The answer admitted the execution

of the contract, denied the other allegations, and charged that the plaintiff obtained the execution of the contract through misrepresentation, and showed himself incompetent to manufacture the yeast, he failing after repeated trials.

It appeared that the defendants owned and managed a distillery in St. Louis, and that the plaintiff entered upon the performance of the contract there. There was evidence tending to show that the plaintiff had been a practical distiller and yeast-maker in Hungary, and that before entering into the contract he made a trial of his skill as a manufacturer of compressed yeast at the defendants' distillery in St. Louis ; that he continued to act under the contract until July 4, 1877, when he was discharged. There was evidence to the effect that he faithfully executed his part of the contract ; that while he was at work the defendants furnished the implements and materials at their expense ; and that the plaintiff procured agents to sell the yeast, who sold at prices fixed by the defendants, the defendants receiving the proceeds of the sales. The evidence was conflicting as to the good or merchantable quality of the yeast, and as to its use for baking purposes. The defendants adduced evidence tending to prove they were compelled to throw away the greater portion of the yeast on account of its quality. The jury returned a verdict for the plaintiff for $2,500, and the defendants appealed.

The following instructions, given for the plaintiff, show the theory upon which the case was put to the jury : —

" The jury are instructed that the contract between plaintiff and defendants, as the same is set out in plaintiff's amended petition, stands admitted ; that by said contract the plaintiff did not warrant that he could or would manufacture for defendants compressed yeast of a certain quality or excellence, but only that he could and would manufacture for defendants a merchantable quality of the article commonly known as compressed yeast. If, therefore, the jury find from the evidence that plaintiff, while

he was permitted to do so, did manufacture a merchantable article of compressed yeast, then the fact that the yeast so manufactured by plaintiff was not equal in quality to yeast manufactured by other parties in this city or other cities would not of itself justify defendants in discharging the plaintiff from their employ or of terminating the contract."

"The court instructs the jury that if they find for the plaintiff they will assess his damages at such sum, not exceeding eighteen thousand dollars, as they may find from the evidence plaintiff would have made as his share of the contract, if plaintiff would have continued in defendants' employ under said contract for a period of three years from and after April 1st, 1877, less what plaintiff may be actually able to earn during the same period by reasonable diligence. And the jury are further instructed, that while the sales made by defendants of compressed yeast while plaintiff was in their employ, or since, are not in themselves a true indication of sales which defendants would likely make during the period of three years, yet the jury may take the same into consideration, with other evidence showing the probability of the increase or decrease of defendants' business as affected by competition, fluctuation of trade, or other causes, for the purpose of determining the amount actually lost by plaintiff by the breach of the contract."

The objections that there is no mutuality in the contract, that it does not appear that the defendants were bound to furnish any employment to the plaintiff, or any materials to be used in the manufacture of the yeast, are not well taken. The plaintiff agreed to manufacture the yeast, at the distillery which belonged to the defendants, for them, and they agreed to pay " for his service." The term of the contract is prescribed, and the plaintiff agrees to give his entire time, and not to assist any other party in the manufacture, as long as the contract shall be in force. The plaintiff is to be paid each month. The meaning of the contract, if well-settled

rules of construction are applied to it, is clear. *Lewis* v. *Insurance Co.*, 61 Mo. 534; *Hammer* v. *Breidenbach*, 31 Mo. 49. But if there were any doubts, the parties themselves, by their contemporaneous acts, made all doubts certainties. The plaintiff went to work at the distillery of the defendants, they furnishing and paying for materials which he used for them in the manufacture of yeast which was sold at prices fixed by them. They now ask the court to put upon the contract a meaning repugnant to that which their own acts have given to it.

It is urged that the terms of the contract furnish no means of computing any damage arising to the plaintiff by a breach of it. But the fact that there may be difficulty in computing the damages is not to enable the party who has made the contract out of which the difficulty grows, and then broken it, to escape with nominal damages. Here there was evidence tending to prove the quantity of yeast made by the plaintiff, and the prices it was sold for by the defendants, during the time the plaintiff was actually employed; as also to prove the business was least profitable in the beginning of such an enterprise. The question here did not relate to profits; the plaintiff was to be paid twenty per cent of the gross cash receipts. The difficulty, however, consisted in saying how far, in respect to the gross receipts from future sales, the sales of the past would afford a test by which to determine those of the future. That past sales, and even under certain circumstances past profits, may be an element which, with testimony as to the probable amount of future business, is competent to go to the jury, seems now well settled. There is, however, no presumption, because the business has been of certain proportions, or attended with certain results, that it will continue such in the future; and therefore there should be testimony establishing the connection, and tending to show the amount and character of future business as compared with that of the past. *Lewis* v. *Insurance Co.*, 61 Mo. 535; *Alfaro* v.

*Davidson,* 40 N. Y. Sup. Ct. 87. See *Hoy* v. *Gronoble,* 34 Pa. St. 1; *Masterton* v. *Mayor, etc.,* 7 Hill, 62; *Burrell* v. *Saginaw, etc., Co.,* 14 Mich. 35; *Philadelphia R. Co.* v. *Howard,* 13 How. 344; *Fox* v. *Harding,* 7 Cush. 516. Here the instruction as to the measure of damages correctly expressed the rule applicable to the case.

It is complained that the court below erred in refusing to grant to defendants a new trial on the ground that after their counsel had closed his argument to the jury, and during the final address of the plaintiff's counsel, the latter made certain statements as to the amount of a verdict rendered by a jury upon a former trial of the case. It appears that the plaintiff's counsel stated to the jury that upon the first trial of this cause the jury found in favor of the plaintiff the sum of $5,000. To this the defendant's counsel objected, and the court then sustained the objection, and ruled that such statement was not proper to be made before the jury. The record then states that " said counsel for plaintiff, by way of apology for his action in this regard, replied, in the presence of the jury, that such former finding was a matter of record in this case." This statement of counsel as to the amount of the previous verdict was highly improper, and should not have been made. That verdict had been set aside, and the fact that there might have been a minute of it upon the papers in the case was no justification of the remark. The jury had nothing to do with any such verdict, and the fact that it had been rendered should not have been called to their attention. We should reverse the judgment in this case were it not that the record shows that the court ruled that such statement was not proper to be made before the jury, and sustained the objection. It must be considered that this action of the court had the effect of doing away with the mischief of the remark, and it is not to be presumed that the final explanation of the counsel, uttered by way of apology, deprived the distinct ruling of the court of its effect, especially as the court below, which witnessed

the whole proceeding, refused to grant a new trial. It must be presumed that the court below would have granted a new trial if the final remark of the plaintiff's counsel was so uttered as to have had the effect of opposing or resisting the ruling that had been made. But the court below evidently considered that the final remark was made in the spirit of submission, and that the effect of the ruling remained as before.

The judgment will be affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.