Argued February 10, affirmed March 9, rehearing denied April 6, 1915.

## McGINNIS v. STUDEBAKER. *

### (146 Pac. 825; 147 Pac. 525.)

**Damages—Loss of Profits—Breach of Contract.**

1. Recovery may be had for loss of profits occasioned by breach of contract, where the business of which plaintiff was deprived was contemplated or can reasonably be presumed to have been contemplated by parties when the contract was made, and it is reasonably certain that gain or profit would have been derived therefrom, although the amount of such gain may be uncertain.

> [As to loss of profits in action for breach of contract to sell, see note in 42 Am. Rep. 461. As to right to recover profits as damages for breach of contract where profits are very object of contracts, see note in Ann. Cas. 1914D, 36.]

**Damages—Breach of Contract—Loss of Profits.**

2. In an action for the breach of a contract, in which plaintiff acted as sales agent for defendant's automobiles on commission, but which gave no exclusive agency for a definite period, the profits derived by the plaintiff from such sales were clearly contemplated by the parties; but where the only proof of damage was that defendant discharged plaintiff before he could consummate sales to his prospective customers, and there was nothing to show that sales were made or could have been made to more than four customers, a verdict for plaintiff for commissions on the amount of sales to all the prospective customers was properly set aside by the trial court.

**Principal and Agent—Termination of Employment—Complaint.**

3. Alleged loss of opportunity to sell to prospective purchasers listed by plaintiff *held* the pith of his complaint for termination of his employment to sell defendant's automobiles on commission.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

This is an action by Clinton D. Phelps against the Studebaker Corporation of America, in which F. E. McGinnis, administrator, was substituted as plaintiff after the death of the original plaintiff.

The defendant, an automobile manufacturer, maintained a retail sales department in Portland, Oregon. The plaintiff was employed by defendant on January

---

*On the question of loss of profits as element of damages for breach of contract, generally, see note in 53 L. R. A. 34.     REPORTER.

21, 1913, as a retail salesman. Thereafter the defendant transferred its retail business to the Oregon Motor Car Company, and for that reason on April 8, 1913, the employment of plaintiff was terminated. Claiming that his services had been engaged until December 31, 1913, and that defendant had agreed to pay a commission of 5 per cent on each car sold, the plaintiff commenced this action for the recovery of damages and obtained a verdict of $1,200. The jury awarded $300, of the amount recovered, as damages suffered between January 21, 1913, and April 8th following, on account of the failure of defendant to comply with its agreement to keep a sufficient number of cars to demonstrate with; and, after deducting earnings received while in the employ of others, plaintiff was allowed $900 on account of the loss of commissions, which he would have earned on the sale of cars between April 8th and December 31st, if defendant had not terminated the employment. On the motion of defendant, a new trial was granted, and the plaintiff appeals.

<div align="center">Affirmed.  Rehearing Denied.</div>

For appellant there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

For respondent there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. John McCourt.*

Mr. Justice Harris delivered the opinion of the court.

In substance the complaint alleged that plaintiff could have sold more cars between January 21, 1913, and April 8th, if defendant had provided cars for dem-

onstrating purposes; that it was agreed that the early portion of the year for which plaintiff was employed should be devoted by plaintiff to securing lists of prospective purchasers and interesting them in the cars sold by defendant; that plaintiff did devote about ten weeks of his time securing names of prospective purchasers, and by April 8th had turned over to defendant a large list of prospective purchasers, which list defendant delivered to other parties, who then negotiated with the persons, whose names appeared on such list; and that, if plaintiff had been permitted to continue in his employment, he would have made sales to the persons listed and other prospective purchasers sufficient to have brought him $1,500 in commissions.

The defendant manufactured three types of automobiles, which were priced at $1,650, $1,290, and $885. When the plaintiff entered the service of defendant, he was without experience in the sale of automobiles. He sold eight cars between January 21st and April 8th. The company employed three or more salesmen, whose compensation and duties were the same as plaintiff's. It was the duty of each salesman to make a daily report showing the names of persons who might become interested in the purchase of an automobile, and the persons thus reported were known as "prospects." The plaintiff had seen five or six of his "prospects" driving Studebaker cars after April 8th, and for that reason assumed that these cars had been purchased. The plaintiff testified that he had worked up a lot of cases, so that a demonstration was all that was necessary to effect a sale, because he had been led to believe that purchases would be made if the car was demonstrated and proved to be satisfactory. There was no evidence tending to show that any of plaintiff's "prospects" purchased a Studebaker car, except W. W. Graybeal

and John P. Miller, each of whom purchased a $1,290 car, and except Harvey O'Brien and W. W. Graves, who bought $885 cars. The Oregon Motor Car Company received from the defendant a list of plaintiff's "prospects." It appears also from the evidence that names of persons on the Studebaker prospect list might also be on the prospect list of concerns selling other makes of automobiles.

The pith of plaintiff's complaint is that the termination of his employment deprived him of the opportunity of selling to the prospective purchasers listed by him, and the evidence is largely directed to that phase of the case.

1. The theory of the law is to award compensation for gains prevented and for losses sustained when a contract is broken; and a person breaking a contract is liable for the direct, natural and proximate result of his act. The party damaged is not precluded from recovering anticipated profits merely because they are such, since the loss of anticipated profits is a damage that should be compensated for just as much as is the destruction of property. Repeated decisions of this court, as well as the announcements made by courts in other jurisdictions, have firmly established the doctrine that if the business of which the complaining party was deprived was contemplated or could reasonably be presumed to have been contemplated by the parties at the time of making the contract, and if it is reasonably certain that a gain or benefit would have been derived, then damages may be recovered. Uncertainty as to the amount of damages does not prevent recovery, but uncertainty as to whether any benefit or gain would have been derived at all does bar a claim for damages. If it is reasonably certain that a gain or benefit has been prevented, then plaintiff is entitled to damages for the

amount of that gain or benefit: *Blagen* v. *Thompson,* 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315) ; *Hoskins* v. *Scott,* 52 Or. 271 (96 Pac. 1112) ; *Bredemeier* v. *Pacific Supply Co.,* 64 Or. 576 (131 Pac. 312) ; *Fields* v. *Western Union Tel. Co.,* 68 Or. 217 (137 Pac. 200) ; *Griffin* v. *Colver,* 16 N. Y. 489 (69 Am. Dec. 718) ; *Hichhorn* v. *Bradley,* 117 Iowa, 130 (90 N. W. 592) ; *Wakeman* v. *Wheeler & Wilson Co.,* 101 N. Y. 205 (4 N. E. 264, 54 Am. Rep. 676) ; *Wells* v. *Nat. Life Assn. of Hartford,* 99 Fed. 222 (39 C. C. A. 476, 53 L. R. A. 34) ; *Emerson* v. *Pacific Coast etc.,* 96 Minn. 1 (104 N. W. 573, 113 Am. St. Rep. 603, 6 Ann. Cas. 973, 1 L. R. A. (N. S.) 445) ; *Schumaker* v. *Heinemann,* 99 Wis. 251 (74 N. W. 785) ; *Rice* v. *Caudle,* 71 Ga. 605; *Cranmer* v. *Kohn,* 7 S. D. 247 (64 N. W. 125) ; *Goldman* v. *Wolff,* 6 Mo. App. 490.

2. It will be observed that the rule as stated embraces two elements: (1) The business or benefit of which the complaining party was deprived must have been contemplated by the parties, or reasonably presumed to have been contemplated; and (2) it must be reasonably certain that a gain or benefit was prevented. The very nature of the agreement between the parties supplies the first element, because it was the commission on each sale, and therefore the benefit and profit which plaintiff contracted for. The second essential of the rule has produced much perplexity and led to some confusion; but the difficulty lies not so much in a statement of the rule of law as in the application of the governing principle: *Hichhorn* v. *Bradley,* 117 Iowa, 130 (90 N. W. 592) ; *Emerson* v. *Pacific Coast etc.,* 96 Minn. 1 (104 N. W. 573, 113 Am. St. Rep. 603, 6 Ann. Cas. 973, 1 L. R. A. (N. S.) 445). If reasonable certainty is not attained, and if it is speculative or doubtful whether a benefit would have been derived,

then a complaining party must fail because adequate proof is lacking: *Wakeman* v. *Wheeler & Wilson Co.*, 101 N. Y. 205 (4 N. E. 264). It should be remembered that the instant case is not analogous to that class of cases where there was an exclusive agency for a definite period, or where the agency covered a certain percentage of the entire output, because in such cases subsequent events generally afford an opportunity of knowing whether sales would have been made: *Emerson v. Pacific Coast etc. Co.*, 96 Minn. 1 (104 N. W. 573, 113 Am. St. Rep. 603, 6 Ann. Cas. 973, 1 L. R. A. (N. S.) 445); *Rice* v. *Caudle*, 71 Ga. 605; *Goldman* v *Wolff*, 6 Mo. App. 490; *Hichhorn* v. *Bradley*, 117 Iowa, 130 (90 N. W. 592); *Wakeman* v. *Wheeler & Wilson Co.*, 101 N. Y. 205 (4 N. E. 264); *Bredemeier* v. *Pacific Supply Co.*, 64 Or. 576 (131 Pac. 312); *Gregory v. Spieker*, 110 Cal. 150 (42 Pac. 576, 52 Am. St. Rep. 70); *Carlson* v. *Stone-Ordean-Wells Co.*, 40 Mont. 437 (107 Pac. 419). The facts also easily differentiate *Cranmer* v. *Kohn*, 7 S. D. 247 (64 N. W. 125), where the salesman had for two years sold the goods of his employer; nor does a parallel exist between the case at bar and *Fields* v. *Western Union Tel. Co.*, 68 Or. 217 (137 Pac. 200).

The grievance emphasized by Phelps is that he was damaged by reason of the refusal of the defendant to permit him to consummate sales to his list of "prospects." Aside from the four "prospects" mentioned, it is pure speculation as to whether a sale would have been made to any of the "prospects." Whether any of the persons listed by plaintiff would have purchased a Studebaker automobile or even a car of any make is conjectural and doubtful: *Hoskins* v. *Scott*, 52 Or. 271 (96 Pac. 1112).

"Mere expectations, doubtful offers, or other vague or indefinite assurances of intention to purchase, without expression of quantity or value, must be classed as speculative, and hence not recoverable": *Beck* v. *West & Co.*, 87 Ala. 213 (6 South. 70).

See, also, *Brigham* v. *Carlisle*, 78 Ala. 243 (56 Am. Rep. 28).

Regardless of the reasons assigned in the motion for a new trial, the court was empowered to grant a new trial and properly exercised his authority: *Smith Bros. Typewriter Co.* v. *McGeorge*, 72 Or. 523 (143 Pac. 905); *Frederick* v. *Bard*, 74 Or. 457 (145 Pac. 671); *Pullen* v. *Eugene*, 77 Or. 000 (146 Pac. 822).

The order granting a new trial is affirmed.

AFFIRMED.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Bean concur.

---

Denied April 6, 1915.

On Petition for Rehearing.

(147 Pac. 525.)

Department 2.  Mr. Justice Harris delivered the opinion of the court.

The plaintiff has filed a petition for a rehearing, and he contends that the court misapprehended the issue presented by the pleadings.  We made the statement, advisedly, that:

"The pith of plaintiff's complaint is that the termination of his employment deprived him of the opportunity of selling to the prospective purchasers listed by him, and the evidence is largely directed to that phase of the case."

The complaint alleges that:

"It is understood and agreed that the early portion of said year for which plaintiff was employed should be by plaintiff devoted to securing lists of prospective purchasers of said cars and in interesting prospective purchasers thereof in the types and models of cars manufactured by defendant, and said defendant therein and thereby agreed not to terminate plaintiff's said employment until the end of said year, and to give plaintiff a reasonable opportunity to consummate sales to all such persons whose names were put on said list as might be desirous of purchasing any of the types of automobiles manufactured by defendant; that, in consideration of plaintiff's services in securing purchasers of said output of defendant, said defendant promised and agreed to pay plaintiff 5 per cent of the factory list price of all automobiles for which plaintiff should secure orders and which plaintiff should sell from the output of said defendant, including automobiles manufactured by other firms and corporations, and which were acquired and offered for sale by defendant."

"That plaintiff, on or about the said 21st day of January, 1913, began work under said employment, and for a period of about ten weeks thereafter devoted his time exclusively to securing lists of prospective purchasers of the various types and models of automobiles offered for sale by defendant, and to demonstrating such automobiles to said purchasers, and inducing said prospective purchasers to purchase automobiles of and from defendant; that, in violation of the contract and agreement aforesaid, said defendant during the said ten weeks failed and neglected to supply plaintiff with or keep on hand for plaintiff's use any automobiles of the aforesaid types, known as Studebaker 35 and Studebaker 6, and plaintiff was thereby wholly prevented from making any demonstrations of said classes, although plaintiff had secured names of and entered into negotiations with many prospective purchasers, said persons being named in Schedule A annexed hereto."

And then plaintiff details his grievance on account of the failure to supply sufficient cars for demonstrating purposes.    Continuing the complaint asserts:

"That on or about the 8th day of April, 1913, plaintiff had secured and turned over to defendant, for the purpose of permitting defendant to keep a record thereof, a large list of the names of prospective purchasers of the various types of automobiles offered for sale by defendant, which list is hereto annexed and marked Schedule A, and plaintiff had expended a great deal of time and labor in securing said lists and in negotiating with said purchasers for the sale of each thereof of the various types of automobiles manufactured by defendant, and, had plaintiff been permitted to continue in his said employment for defendant, and had defendant kept and performed the said agreement of employment on its part, and supplied plaintiff with a sufficient number of demonstrating cars to enable plaintiff to demonstrate the merits thereof to the persons named in said lists and other prospective purchasers of automobiles, and supplied plaintiff with a sufficient number of automobiles to enable him to consummate sales to said prospective purchasers, plaintiff would have been able to realize as his commission under said contract on sales to be made by him during said year of his employment and from and after the said 8th day of April, 1913, the sum of $1,500."

The remainder of the complaint, as we find it in the printed abstract, occupies about three pages, and, with the exception of the three clauses "or to any other persons," "or to anyone," "to any persons," the listed prospective purchasers constitute the subject matter of such remainder of the complaint.

The alleged loss of opportunity to sell to prospective purchasers listed by plaintiff is the pith of the com-

plaint as plaintiff has told the story of his grievance in his written pleading.

The petition for a rehearing is denied.

<div align="center">

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BEAN concur.