Argued June 25, affirmed July 22, rehearing denied September 9, 1919.

## FLETCHER *v.* FISCHER.

(182 Pac. 822.)

**Factors—Brokers—Status of Sales Agent.**

1. Sales agent for cereal manufacturers, as to a stock of goods kept in a particular city, from which sales were made, *held* a factor, while as to shipments made from another point where the manufacturer's mill was located he was a broker, having been in both classes of transactions an agent acting on a *del credere* commission, since he guaranteed all accounts.

> [As to definition and distinctive features of factors, see note in 58 Am. Dec. 158.]

**Brokers—Sale on Del Credere Commission—Status as Debtor.**

2. The weight of authority is that a broker selling goods on a *del credere* commission stands in the relation of an original debtor to his principal.

Contracts—Vague Language—Construction by Parties—Evidence.

3. In an action for breach of contract, the court properly admitted evidence of its practical construction by the parties as indicated by their conduct to explain vague and uncertain language.

Principal and Agent—Default of Agent—Failure to Remit—Reasonable Time and Demand.

4. Where the contract of a sales agent for cereal manufacturers was silent as to when remittances should be made by him, he could not be put in default by a failure to remit until after a reasonable time had elapsed and demand made by the manufacturers.

Pleading—Reply—Departure.

5. In an action by the sales agent of cereal manufacturers for breach of contract, plaintiff's reply to defendants' affirmative answer, reciting acts which disclosed a course of conduct by defendants indicating a practical interpretation of the contract, and contending it was too late for them to repudiate such interpretation, *held* not to admit plaintiff's own prior default and to constitute a departure from the cause of action set forth in the complaint.

Principal and Agent—Sales Agent—Damages—Evidence.

6. In an action against cereal manufacturers for breach of their contract to employ plaintiff exclusively as selling agent for five years, evidence of plaintiff's business as a jobber in groceries, its extent, expenses, increase and the increase of commissions on the particular cereal line, *held* competent and admissible on the issue of plaintiff's damages and permissible recovery.

Principal and Agent—Sales Agent—Breach of Contract.

7. In an action against cereal manufacturers by their sales agent for breach of their contract to employ him exclusively for five years, evidence *held* sufficient to support verdict for plaintiff for $17,000 damages, less $5,500 already in his hands.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

This is an action for the recovery of damages for the breach of a contract. The complaint recites that on January 2, 1914, plaintiff and defendants entered into a contract whereby plaintiff became the exclusive selling agent for Oregon and Washington of cereal products manufactured by defendants at their mill in Silverton, for a term of five years. A copy of the contract is attached to the complaint as exhibit "A." This contract was modified in July, 1914, by a supplemental writing, also made a part of the complaint as

exhibit "B." By the terms of this contract, as modified, it was agreed that until January 1, 1915, plaintiff should receive a total commission of 33⅓ per cent, and after that date his total commission should be 30 per cent. In the written instrument the defendants, under the firm name, "Fischer's Flouring Mills," are the party of the first part, and plaintiff is the party of the second part. Among others, the contract contained the following clauses:

"VII. The party of the first part is to carry a complete stock of all their cereals in Portland at all times upon the order of the party of the second part.

"VIII. Deliveries or shipments to the retail trade are to be made from Portland or Silverton, Oregon, whichever is the more expeditious. * *

"XI. That the party of the second part is to guarantee the payment of all accounts, and any bills which are uncollectable are to be charged to the commission account of the party of the second part. Copies of all statements of accounts mailed each month are to be forwarded to the party of the second part.

"XII. A full account of all commissions earned is to be sent to the party of the second part each month by the party of the first part with a check to cover the same."

It is alleged that on September 1, 1916, defendants violated the terms of the contract by repudiating their obligation thereunder, and refusing to send plaintiff any more cereals; that plaintiff has sent in orders from many customers in Oregon and Washington for more than 130,000 pounds of rolled oats and other cereals mentioned in the agreements, which defendants have failed and refused to fill, and refuse to pay plaintiff any commissions, and expressly disavow any obligations under the contract. The allegations in regard to damages are as follows:

"That at the time when the said defendant, August William Fischer, as manager and trustee of the said estate, and this plaintiff executed the said contract, a copy of which is hereto attached and marked Exhibit 'A,' the said defendant well and fully knew that the plaintiff had no business in, nor line of customers for cereals, and would be required to build up a business, trade and goodwill in the same, and that when thus built up and acquired the same would be valuable not only to the defendants but also to the plaintiff; and during the first eight months of the said contract the plaintiff sold not less than about $19,200 worth of cereals; that during the next twelve months, from September 1st, 1914, to September 1st, 1915, of the said contract the plaintiff sold not less than $45,000 worth of cereals; during the period of twelve months immediately preceding the breach of the said contract by the defendants, to wit: September 1st, 1915, to September 1st, 1916, the plaintiff sold not less than about $67,250 worth of cereals on which the plaintiff's gross commissions are $20,175, and after the plaintiff has deducted therefrom all sums of money allowed by him to the trade as discount and freight, salesmen's salaries and expenses, office expenses, incidentals and all other expenses, etc., he has remaining in his hands as clear net profit $5,196, by which the plaintiff has ascertained that it costs him to carry on and transact his aforesaid business a total expense of not more than 70 per cent of his total commissions, leaving in his hands as a net balance and clear profit to this plaintiff 30 per cent of his total commissions; that the said business up to the present time has been constantly growing larger and larger, thereby gradually decreasing the *pro rata* expense of handling the increased volume of business; and, had the defendants not violated and repudiated the said agreement, the said business would continue to grow much larger, and the plaintiff would have continued to receive 30 per cent commission upon the total sale of cereals, and estimates that not less than 31 per cent of the total com-

missions would have been net profit to this plaintiff during the remaining period of the said contract.

"That by reason of the facts aforesaid the plaintiff has established upon the market the cereal products manufactured by the defendants in the said Corvallis and Fischer Flouring Mills, and has established for the same in the northwest a good name and reputation, and has established for himself a good reputation and goodwill in the cereal market in the aforesaid territory, which is of great value to the plaintiff, and large numbers of customers are purchasing the said cereals manufactured by the defendants by reason of the said efforts made by the plaintiff to establish the same upon the market; that on account of the said repudiation of the said contracts and agreements, and by reason of the conduct of the said defendant August William Fischer, as manager and trustee of said estate, and by reason of all the facts herein enumerated, and especially in paragraph XV of this complaint, and by reason of the fact that plaintiff cannot fill his orders for cereals now on hand and supply his customers, and by reason of the fact that defendants are now notifying the trade that they have severed relations with the plaintiff and that he is no longer able to secure their products, the plaintiff's standing and goodwill, reputation and good name, especially in the trade and among the customers and purchasers of cereals throughout the northwest, and especially in the states of Oregon and Washington, and the good name and reputation which the plaintiff built up and procured for the said cereals has been rendered useless, and has been lost to the plaintiff.

"That the plaintiff estimates and believes that during the months of September, October, November and December, 1916, the plaintiff would and could sell not less than $24,000 worth of cereals, upon which he would have received a total commission of not less than $7,200 out of which he would have had remaining in his hands as clear net profit over and above all expenses a sum of not less than $2,232; and plaintiff estimates and believes that during the fourth year of his

said contract the plaintiff could and would have sold not less than $71,400 worth of cereals upon which he would have received a total commission of $21,420, and after the plaintiff would have paid out all of the expenses incident to the sale of that amount of cereals, the plaintiff estimates he would have had remaining in his hands the sum of $6,640.20 over and above all of his expenses; and the plaintiff estimates and believes that during the fifth year, being the last year of the said contract, the plaintiff could and would have sold not less than $74,970 worth of cereals, upon which he would have received a total commission of $22,491, and after paying all of the expenses incident to the sale of the said cereals he estimates he would have had remaining in his hands over and above all expenses a sum of money not less than $6,972.20, and that, therefore, based upon the above estimates of business, the plaintiff would have received during the balance of the term of his contract not less than $15,844.41 net commissions and profits over and above all expenses and liabilities; that the said contracts, copies of which are hereto attached and marked exhibits 'A' and 'B,' were worth to this plaintiff not less than $15,844.41 for the balance of the term from September 1, 1916, to the first day of January, 1919; and by reason of the said acts of the said defendants, and especially of the said August William Fischer as manager and executor of the said estate, the value of the said contracts has been destroyed and lost to the plaintiff.''

It is further asserted that because there are but few cereal mills in the territory, and that as these have their own cereal departments, plaintiff will not be able to make a similar contract elsewhere. It is also alleged that plaintiff was obliged to go into the open market and purchase supplies to fill certain of the orders which defendants refused to supply and that to do so cost him $250 more than it would have done if defendants had complied with the terms of the contract, and that he will be compelled to do the same

thing with other orders, to his damage in the sum of $2,500. These allegations are followed by this:

"That by reason of past transactions had between the plaintiff and the said August William Fischer as manager and trustee of the said estate, the plaintiff would be indebted to the defendant August William Fischer as manager and trustee of the said estate in a sum of money amounting to approximately $5,500 had the defendant not repudiated the said agreements, and the plaintiff is now holding and retaining the said sum of approximately $5,500 as an offset to the damages incurred by him by reason of the said facts aforementioned, and has notified the said defendant August William Fischer of the aforesaid reason for holding the said sum of money."

After averring full compliance by plaintiff with the terms of the contract, there is a prayer for judgment in the sum of $18,594.41 less the aforesaid sum of $5,500.

The answer admits the execution of the contract as alleged in the complaint, but denies that the defendants have breached the same, denies all of the allegations regarding damages suffered thereby, and denies that plaintiff has fully performed his obligation thereunder. They then plead affirmatively as follows:

"That from the midsummer of the year 1916 up to the twenty-second day of September, 1916, the plaintiff made requisitions for cereals to be shipped to Portland under the clause in the said agreement numbered seven, requiring the defendant August William Fischer to carry a complete stock of all their cereals in Portland at all times upon the order of the plaintiff, and under guise of the said requisitions, being in possession of the said cereals, at Portland, Oregon, the plaintiff sold the said cereals to various purchasers in Oregon and Washington on his own account and billed the said goods to the said purchasers in his own name as the seller, and did not, in many instances,

notify, when said orders were given, the said August William Fischer, or any of the defendants, or the Corvallis Flouring Mills, or the Silverton Mills, of the names of the said purchasers, or the amounts of the said purchases, or the prices thereof, and, contrary to the said agreement, collected sums of money from the said purchasers upon said sales, and in violation of the said agreement retained the said sums of money in his own hands, and failed, neglected and refused to transmit the same to the defendants, or either of them, and when the defendants discovered these facts the said August William Fischer demanded payment of the said sums of money, and the said plaintiff failed, neglected and refused to pay the said sums of money upon said demand, and has ever since failed, neglected and refused to pay the same; and that upon complaint being made by the plaintiff to the defendant August William Fischer, under the name of the Corvallis Flouring Mills, notified the plaintiff by wire as follows:

" 'When you pay your account we will proceed to fill further orders.'

"But the defendants allege that the plaintiff did not, in response to said wire or otherwise, pay the said account or any part thereof, and never has done so; that about one half of the $5,500 alleged in the complaint to have been retained by the plaintiff are the proceeds which he received as aforesaid for the cereals sold in the manner aforesaid, and the other one half, or thereabouts, is the balance of the sum due to the defendants by the plaintiff for flour sold by them to the plaintiff.

"The defendants allege that they have performed their said contract in every respect, and were at all times ready and willing to perform it until the plaintiff himself violated the said contract in the manner hereinbefore described, and that the alleged breaches of the said contract, alleged in the second amended complaint, by the defendants, are the refusal to fill the said orders under the circumstances hereinbefore alleged in this answer, and not otherwise."

The reply denies the allegations of the affirmative answer and further alleges:

"That at the times mentioned in the second amended complaint, when the defendants refused to further comply with their contracts with the plaintiff, copies of which said contracts are attached to the second amended complaint, and therein marked exhibit 'A' and exhibit 'B,' the said defendants based their refusal to comply with the said contracts upon only one ground, and no other, to wit: that the defendants did not care to pay the plaintiff a commission of thirty per cent upon sales of cereals, and said they would not pay the plaintiff thirty per cent; that at all of the times when the said defendants refused to comply with the said contracts, copies of which are attached to the second amended complaint and marked exhibits 'A' and 'B,' said defendants based their said refusal upon only the ground aforesaid, and no other; and said defendants have never at any time prior to the filing of the answer herein based their said refusal to fill the plaintiff's orders for cereals and maintain their stocks in Portland upon the ground that the plaintiff had refused to pay to said defendants any money whatsoever; and, therefore, the plaintiff alleges that said defendants are estopped to assert, and ought not be permitted to say that the defendants, or any one of them, refused to fill orders for cereals sent to them by the plaintiff, and refused to do and perform further the contracts, copies of which are attached to the second amended complaint, and therein marked exhibits 'A' and 'B,' and rescinded the said contracts upon the ground and for the reason that the plaintiff owed to the defendants, or any one of them, any sum or sums of money whatsoever which plaintiff refused to pay.

"The plaintiff further replying to the new matter alleged in the answer of the defendants to the second amended complaint, and therein entitled a 'further and separate defense to said second amended complaint,' and by way of new matter, alleges as follows:

"That upon numerous and divers times and occasions, all well known to the defendants, through the said defendants' agents August William Fischer and Louis Henry Fischer, the plaintiff ordered from the said defendants, through their Fischer's Flouring Mills and Corvallis Flouring Mills, in his, the plaintiff's, own name, various quantities of cereals mentioned in the second amended complaint in exhibits 'A' and 'B' thereto attached, and the said defendants filled the plaintiff's said orders for cereals well and fully knowing and understanding that the plaintiff was ordering the same in his own name, and accepted the plaintiff's money therefor, when the plaintiff transmitted same to the defendants at the regular times and when the plaintiff remitted to defendants for various other quantities of cereals, and in the same manner and under the same circumstances as the plaintiff remitted to defendants for other quantities of cereals sent to customers upon requisitions made in the name of the customers; that the above methods of dealing in said cereals were well and fully known to the said defendants, and were acquiesced in by the defendants, and that said defendants never at any time prior to the filing of their answer herein objected to the same; and, therefore, the plaintiff alleges that the said defendants are at this time estopped to object thereto and use the same as a justification for their breach of the contracts mentioned in the second amended complaint, copies of which are thereto attached and marked exhibits 'A' and 'B.'

There was a trial by the court without a jury, and a judgment for plaintiff, in the sum of $17,534.26, less the sum of $5,500, already in the hands of plaintiff. Defendants appeal.             Affirmed.

For appellants there was a brief over the names of *Messrs. Yates & Yates* and *Mr. Thomas Mannix,* with oral arguments by *Mr. W. E. Yates* and *Mr. Mannix.*

For respondent there was a brief over the names of *Messrs. Wilson, Neal & Rossman, Mr. F. M. Saxton* and *Mr. Richard W. Montague,* with oral arguments by *Mr. George Rossman* and *Mr. Saxton.*

BENSON, J.—The first assignment of error to which our attention is directed is to the denial of defendants' motion for a nonsuit. This motion is directed to the sufficiency of the evidence to sustain the allegations of the complaint, and also to defendants' contention that the evidence conclusively establishes a breach of the contract upon the part of the plaintiff, himself, which must preclude him from recovering for any alleged breach by the defendants.

We shall consider the problems thus presented in inverse order. The violations of the contract which are charged against the plaintiff are, that he collected moneys from purchasers of cereals, contrary to the terms of the written agreement, and failed to turn such moneys over to his principal. It is conceded that from the stock of goods kept in Portland, according to the terms of the contract, plaintiff filled orders to customers, billing the goods in his own name, and collecting the money therefor, and that at the time when defendants refused to fill any further orders for plaintiff, the latter then had in his possession the sum of $5,500 so collected, which he notified defendants he was holding as a partial reimbursement for the injuries which he had sustained by reason of their breach of the agreement. There is also evidence to the effect that practically from the beginning of the transactions involved herein, it was the custom of plaintiff to sell from the Portland stock in his own name, reporting and remitting to his principal therefor, by the twentieth day of the succeeding month, and

that this course of business was acquiesced in by the defendants. It is also in evidence that defendants at times, shipped goods to plaintiff's customers direct from the mill at Silverton and billed the same to plaintiff personally. To determine whether or not such evidence precludes the trial court from making a finding of fact "that the plaintiff faithfully performed his contract and was not in default," we must construe the contract under which the parties were acting. The plaintiff contends that the language of the instrument makes him a factor, who after making sales of his principal's goods, has the right to make collections, and that when he has done so, the money so received is his own, and that his relation to his principal, in this regard, is that of a debtor, whose delay in paying the debt is in no sense a breach of the contract. The defendants, upon the other hand, insist that the instrument creates no more than a simple sales agency, and that under the contract he is not authorized to make collections in any case, and that such action is a distinct breach of the compact. It will be noted that the contract contemplates two classes of transactions: the sale and shipment of goods from a warehouse in Portland, under the control of the plaintiff, and a like shipment from the mills at Silverton. It is also stipulated that the agent shall guarantee payment of all debts arising through his agency. The instrument is silent as to who shall make collection, except for whatever implication may be found in paragraphs XI and XII thereof, which read thus:

"XI. That the party of the second part is to guarantee the payment of all accounts, and any bills which are uncollectible are to be charged to the commission account of the party of the second part. Copies of all statements of accounts mailed each month are to be forwarded to the party of the second part.

"XII.   A full account of all commissions earned is to be sent to the party of the second part each month by the party of the first part with a check to cover the same."

In 2 Mechem on Agency (2 ed.), Section 2497, we find this clear distinction between a factor and a broker:

"A factor is one whose business it is to receive and sell goods for a commission.   He differs from a broker in that he is intrusted with the possession of the goods to be sold, and usually sells in his own name.   He is invested by law with a special property in the goods to be sold and a general lien upon them, and their proceeds, for his advances; and, unless there be an agreement or usage to the contrary, he may sell upon a reasonable credit.

"One may be both a factor and a broker, and he may serve his employers in both of these capacities. When he acts as a broker his liabilities will be governed by the law applicable thereto; and the same is true when he acts as a factor.   His rights and liabilities are not governed by the fact that he acts oftener in one capacity than the other, but rather in the capacity in which he acts in the particular transaction."

1–4.  We therefore conclude that as to the stock of goods kept in Portland, from which sales were made, the plaintiff was a factor, and as to the shipments made from Silverton, he was a broker, and as to both classes of transactions, he was an agent selling upon a *del credere* commission, since he was required to guarantee the payment of all accounts.   The weight of authority appears to be that a broker selling goods upon a *del credere* commission  stands in the relation, to his principal, of an original debtor: *Lewis Bros. & Co.* v. *Brehme,* 33 Md. 412 (3 Am. Rep. 190).   There is evidence in the record to the effect that the $5,500

was all received from sales billed out by the plaintiff
from Portland in his own name. As to whether or
not the plaintiff had a right to do this, under his con-
tract, is a doubtful question. The language of the
instrument is vague and uncertain. It might reason-
ably be deduced that the provision to the effect that "a
full account of all commissions earned is to be sent to
the party of the second part each month by the party
of the first part, with a check to cover the same," re-
ferred only to shipments made directly from Silverton
to the customers, and the court properly admitted evi-
dence of the practical construction of the contract by
the parties, as indicated by their conduct. The court
made a finding to the effect that prior to the date,
when the money in the hands of the plaintiff, in ac-
cordance with the practice of the parties, should have
been remitted, the defendants had violated the terms
of the agreement by refusing to fill plaintiff's orders
for cereals, and that the defendants had not discon-
tinued the business of manufacturing cereals for sale
in the territory covered by the agreement, and had
not withdrawn from the cereal business in that terri-
tory, and there is evidence to support such findings.
The contract is silent as to when remittances shall be
made, and therefore the plaintiff could not be put in
default by a failure to remit until after a reasonable
time had elapsed and a demand made: 2 Mechem on
Agency (2 ed.), § 2544.

5. It is further urged that plaintiff has admitted
his own prior default in his reply to the answer, and
that such reply constitutes a departure from the cause
of action set forth in the complaint. This contention
is based upon the allegations of defendants' affirma-
tive answer, to the effect that, in violation of the terms
of the agreement, plaintiff had sold cereals to various

customers, billing the same in his own name as the seller, and failing, in many instances, to notify defendants of the names of the purchasers, and collecting the moneys therefor, and neglecting to transmit the same to defendants. In reply thereto, the plaintiff makes the following allegation:

"That upon numerous and divers times and occasions, all well known to the defendants, through the said defendants' agents August William Fischer and Louis Henry Fischer, the plaintiff ordered from the said defendants, through their Fischer's Flouring Mills and Corvallis Flouring Mills, in his, the plaintiff's, own name, various quantities of cereals mentioned in the second amended complaint in exhibits 'A' and 'B' thereto attached, and the said defendants filled the plaintiff's said orders for cereals well and fully knowing and understanding that the plaintiff was ordering the same in his own name, and accepted the plaintiff's money therefor, when the plaintiff transmitted same to the defendants at the regular times and when the plaintiff remitted to defendants for various other quantities of cereals, and in the same manner and under the same circumstances as the plaintiff remitted to defendants for other quantities of cereals sent to customers upon requisitions made in the name of the customers; that the above methods of dealing in said cereals were well and fully known to the said defendants, and were acquiesced in by the defendants, and that said defendants never at any time prior to the filing of their answer herein objected to the same; and, therefore, the plaintiff alleges that the said defendants are at this time estopped to object thereto and use the same as a justification for their breach of the contracts mentioned in the second amended complaint, copies of which are thereto attached and marked exhibits 'A' and 'B'."

We are unable to discover wherein this averment admits any violation of the terms of the compact. It recites acts which, if true, disclose a course of conduct

indicating a practical interpretation of the contract, and contends that it is now too late for defendants to repudiate such interpretation.

6, 7. Finally it is urged that there is no legal evidence in the record upon which the court could base an estimate of the amount of plaintiff's recovery. There is evidence to the effect that plaintiff, prior to, and at the time when he began operations under the contract in question, was a jobber in certain specified lines of groceries; that he maintained an office in Portland, had office help, employed traveling salesmen, etc.; that the increase in business required enlarged quarters, more help and increased expenses. This is followed by exact figures as to his gross commissions from the sale of cereals during the years while the contract was in force, the net commissions for each year after deducting discounts, expenses and losses. The expenses of this business, as carried on in connection with the other business of plaintiff, was computed by comparison of the volume of business in each line, and the expense naturally connected with each. There was a comparison of the business of the first year with that of the second, and an estimate of the comparative increase of sales, owing to advertising, improved quality of the goods and an increased acquaintance therewith by a steadily increasing list of customers, and an estimate of the probable increase in the volume of business during the remaining years of the contract. This kind of evidence, we think, is clearly competent, and sufficient foundation for a verdict or judgment, under the authority of the rulings of this court in a number of cases, including *Bredemeier* v. *Pacific Supply Co.*, 64 Or. 576 (131 Pac. 312), and *McGinnis* v.

*Studebaker*, 75 Or. 519 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868).

The judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.