Argued February 10, affirmed March 2, 1926.

## A. C. PREBLE AND E. W. PREBLE *v.* J. L. HANNA.

### (244 Pac. 75.)

Trover and Conversion—Securely Fastening Doors of Building Containing Personal Property Held to Constitute Conversion.

1.   Defendant's act in securely fastening doors to part of building leased by plaintiffs, and in which the latter had personalty, and in forbidding plaintiffs to remove the fastenings, *held*, to constitute conversion of such personalty.

Action.

2.   Forms of action have been abolished in Oregon.

Trover and Conversion—Action for Unlawful Fastening of Doors of Building Containing Personalty Held One in Conversion Aggravated by Trespass.

3.   Action for damages resulting from unlawful fastening of doors to part of building leased to plaintiffs, and in which they had personalty, *held* one in conversion, aggravated by trespass.

Appeal and Error—Defendant Who Did not Object to Order Addressed to Receiver to Return to Witness Tools Which Had Been Locked Up With Property of Tenant Converted by Defendant Held not Entitled to Complain of Such Order on Appeal.

4.   Where it appeared that tools of witness, a carpenter, were included in personalty converted by defendant by his act in wrongfully locking doors to premises leased to plaintiffs, defendant, who did not object to trial court's order addressed to receiver of premises to return tools to the witness, *held* not entitled to complain of such order on appeal.

---

2.   See 1 R. C. L. 331.

Trover and Conversion—Testimony That Tools of Witness were Among Plaintiffs' Personalty Converted Held Admissible and not Prejudicial.

5. In action for damages for conversion of plaintiffs' personalty, based upon defendant's unlawful act in securely fastening the doors to premises leased to plaintiffs, and in which their personalty was located, testimony of witness that his carpenter tools were among plaintiffs' personalty so converted *held* admissible, and not prejudicial.

Appeal and Error—Instruction Collaterally Involving Title to Premises Leased to Plaintiffs, and Doors to Which Defendant Wrongfully Fastened, Held More Favorable to Defendant Than He was Entitled to.

6. In action for conversion, based on defendant's act in wrongfully fastening doors of premises leased to plaintiffs, where it appeared that, prior to leasing, plaintiff's lessor executed deed of premises to her mother, but that deed was not recorded until after lease, and that defendant purchased the premises from mother after the recording of deed, and that there was no evidence that plaintiffs knew of deed, instructions given for defendant collaterally involving title to the premises, submitting that question as one of fact, *held* more favorable to defendant than he was entitled to.

Vendor and Purchaser—One Purchasing Premises is Bound to Take Notice of, and Respect, Lawful Possession of Occupant Until Its Proper Termination.

7. Defendant, purchasing premises while plaintiffs were in lawful, open and peaceable possession, was bound to take notice of, and respect, such possession until its proper termination.

Trover and Conversion—Evidence of Loss of Profits as Element of Damages from Conversion of Manufacturing Plant Held Admissible.

8. In action for conversion of goods and resultant damages, based on defendant's wrongful fastening of doors to part of building leased to plaintiffs, and in which they were engaged in the manufacture and sale of soap, evidence tending to show loss of profits as element of damages, that is evidence as to the quantity of soap then on hand, actual cost of manufacturing it, and the price plaintiffs were to receive, *held* properly admitted.

Damages.

9. Loss of anticipated profits is compensable.

Damages.

10. Damages for prevention of performance of contract to manufacture and deliver soap at agreed price is difference between contract price and cost of production.

7. See 27 R. C. L. 719.
8. Loss of profits as measure of damages for conversion, see note in 52 L. R. A. 51.

Damages.

11. Damages naturally flowing from tortious act with reasonable certainty are recoverable.

Trover and Conversion—Plaintiffs not Obliged to Receive Property Converted.

12. Plaintiffs were not obliged to receive property after its conversion by defendant, particularly so when no offer to return was made until after the action for damages was commenced.

Actions, 1 C. J., p. 1003, n. 15.
Appeal and Error, 3 C. J., p. 806, n. 71 New; 4 C. J., p. 918, n. 42, p. 1045, n. 51.
Damages, 17 C. J., p. 795, n. 87, p. 796, n. 96, p. 914, n. 44.
Pleading, 31 Cyc., p. 653, n. 62.
Trial, 38 Cyc., p. 1711, n. 19, p. 2092, n. 56, p. 2100, n. 92, 95.
Trover and Conversion, 38 Cyc., p. 2005, n. 1, p. 2030, n. 61, p. 2040, n. 25, p. 2060, n. 61, p. 2078, n. 83, p. 2086, n. 25, p. 2107, n. 53, p. 2109, n. 84.

From Multnomah: H. H. Belt, Judge.

Department 2.

This action was commenced for the purpose of recovering damages for the conversion of personal property and resultant damages. The plaintiffs were the owners of a small plant for the manufacture of soap. The personal property is itemized in the complaint and is alleged to have been of the reasonable market value of $4,635. The plaintiffs claim that it cost them $1,000 to install the machinery, tanks and vats; that they lost the business established by them to their damage in the sum of $10,000, and also demanded exemplary damages in the sum of $5,000, and the further sum of $300, the value of the lease of which they were deprived by the defendant at the time of the conversion of the personal property. It appears from the pleadings and testimony that one N. M. Todd was the owner of said apartment house in the City of Portland and that her title was heavily encumbered; that on the twenty-fifth day of November, 1921, the said N. M. Todd conveyed said premises

to Blanche Todd by a deed which was not recorded
until the twelfth day of April, 1922; that the plain-
tiffs paid to N. M. Todd in December, 1921, the sum
of $200 as rental for the basement of the said apart-
ment house until the first day of October, 1922, taking
a receipt therefor expressing therein the considera-
tion, to wit, the lease of said basement during said
term; that thereafter, to wit, the twenty-ninth day of
April, 1922, the defendant took a deed from Blanche
Todd for said premises; that on the second day of
May, 1922, the defendant caused a notice to be served
upon the plaintiffs requiring them to quit and surren-
der the premises to the defendant within ten days;
that on or about the seventeenth day of May, 1922,
the defendant went to said premises and in the ab-
sence of the plaintiffs securely fastened the door to the
part of the basement used as an office by the plain-
tiffs by nailing a 2x4 scantling on the door and
securely fastening thereto a hasp and staple so that
the same could not be taken off without being pried
off, and fastened the other two doors leading into the
basement from the inside so as to prevent the plain-
tiffs' access to said basement. The plaintiffs later
called up the defendant by phone and asked him if he
had locked the door to the basement. The defendant
replied that he had. Plaintiffs asked him what right
he had to do this, when the defendant answered, "I
put it on there and you leave it on there and leave
the stuff alone and not bother it."

The defendant, after denying the material allega-
tions of the complaint, as an affirmative defense al-
leged that he had gone to the premises and finding
the doors not fastened and partially open, for the
purpose of protecting the property and tenants occu-
pying the upper floors of the apartment house, se-

curely fastened the doors, and in his answer tendered the personal property of which he was accused of converting to the plaintiffs, or whoever might be the owner thereof upon the payment of a certain sum as storage. The case was tried to a jury and a verdict returned in favor of the plaintiffs in the sum of $6,500, including $2,700 as loss of profits. The balance of the said sum was for the value of.the personal property. No sum was allowed for exemplary damages. The court excluded consideration of the items for rent and $1,000 for the expense of installing the machinery used by the plaintiffs in their business. The defendant appeals, assigning some thirteen errors, which will be considered in the opinion.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Henry S. Westbrook.*

For respondents there was a brief and oral argument by *Mr. B. G. Skulason.*

COSHOW, J.—1. The defendant moved at the close of plaintiffs' testimony for a judgment of nonsuit and when both parties had rested for a directed verdict. The latter was based upon the same grounds as the former. The court's rulings were correct. The evidence on the part of plaintiffs was to the effect that the defendant, during the absence of the plaintiffs, securely fastened two of the doors on the inside and fastened the other door on the outside in a very substantial manner. Mr. Linn, a witness, accompanied the defendant and assisted in putting the lock on the third door. He testified that the lock could not be removed except by being pried off. Thereafter when called to account by E. W. Preble in behalf of the

plaintiffs, the defendant forbade the plaintiffs from entering into the basement. Told them to "leave the stuff alone and not bother it." He said they would get into trouble if they undertook to reclaim the property. This · conduct on the part of defendant was the exercise of dominion and control over the property of plaintiffs inconsistent with the rights of the plaintiffs. The defendant exercised such control and took possession of the property withholding it from the plaintiffs in such manner as to constitute conversion. In *Hunt* v. *First Nat. Bank,* 102 Or. 398, 399 (202 Pac. 564, 565), this court speaking through Mr. Chief Justice BURNETT defined conversion as follows:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time."

*Lee Tung* v. *Burkhart,* 59 Or. 194 (116 Pac. 1066), cited with approval in *Jeffries* v. *Pankow,* 112 Or. 439, 449 (223 Pac. 745, 229 Pac. 903; 28 Am. & Eng. Ency. of Law (2d ed.), 679, 681, 684, 705, 708, 709). An instructing case and one very similar to the instant case is *Hughes* v. *Coors,* 3 Colo. App. 303 (33 Pac. 77). See, also, *Gregory* v. *Oregon Fruit Juice Co.,* 84 Or. 201, 202 (164 Pac. 728); *Budd* v. *Multnomah Street Ry. Co.,* 12 Or. 271, 274 (7 Pac. 99, 53 Am. Rep. 355). The evidence adduced by the plaintiffs is sufficient to support the verdict. .

2, 3. Error is assigned because the court refused to compel the plaintiffs to elect whether to try the case as one of conversion or one of trespass. The

defendant contends that two causes of action are stated in the complaint. We believe the court properly denied defendant's motion to compel plaintiffs to elect. The proper construction of the complaint is that the goods of the plaintiffs were converted by the defendant. The defendant in converting plaintiffs' goods committed a trespass. Forms of action have been abolished in this state. The circuit judge ruled that it was an action in the nature of conversion. This ruling was correct in our opinion. The action is for conversion aggravated by a trespass.

4, 5. Error is assigned on the ruling of the court in permitting the witness, W. J. Cummings, to testify regarding his tools. This witness was a carpenter and had been engaged in doing some work in the basement for the plaintiffs. He had left his tools in the basement with the personal property of the plaintiffs. His tools were locked up by the defendant and he was allowed to testify that he had been unable to get them although he had tried a number of times. While this witness was on the stand the court made an order directing the receiver, now in charge of the property, to deliver the tools to the witness. Before making this order the circuit judge asked if there was any objection to such an order. No objection was made and the court made the order accordingly. The defendant cannot complain of the court's action in that regard. He should have objected at the time. The evidence was admissible as tending to prove the conversion. The tools of the witness were commingled with the goods of the plaintiffs and were treated in the same manner as the plaintiffs' goods by the defendant. The evidence was not prejudicial, and it was of the same kind and to the same purport as the evidence concerning plaintiffs' goods. It is

true that the goods of the witness were not involved and plaintiffs asked no relief on that account. This testimony was an incidental feature of the case and we are unable to see how it could have prejudiced the defendant.

6, 7. Two assignments of error are based upon the rulings of the court regarding the title to the real property involved in the case. One of the assignments of error charges the Circuit Court with having permitted the plaintiffs to try out the question of the title to the real property. We do not so understand the rulings of the court. The judge in charging the jury used this language of which the defendant complains:

"In other words, if we accept this instrument at its face value, or what it expresses on its face, it would be a conveyance of all of the right, title and interest which Nellie Todd had to her mother, Blanche Todd, but that it is a disputable presumption and may be overcome by evidence satisfying you, and by the greater weight thereof, that it was not an absolute conveyance of title, but that Nellie Todd still had a beneficial or equitable interest in it. In other words, the mother held it in trust for the daughter. Now that is a question of fact which you are called upon to determine as to whether this conveyance of Nellie Todd to Blanche Todd was a conveyance of all right, title and interest that Nellie Todd had in this property, or whether it was merely a conveyance vesting a title in trust to be held by the mother."

The evidence discloses that in November, 1921, Miss N. M. Todd delivered a deed to her mother, Blanche Todd, describing the premises involved. The plaintiffs adduced evidence to show that the delivery of this deed was upon condition that it should not be recorded until the death of the grantor, Miss N. M. Todd. The said N. M. Todd accepted $200 from

the plaintiffs as the rental for said premises from December 17, 1921, to October 1, 1922, said rental having been paid by the plaintiffs December 17, 1921. Thereafter in April, 1922, the said Blanche Todd placed said deed on record. It was contended by the defendant that Miss N. M. Todd was not the owner of the premises at the time she leased the same to the plaintiffs and accepted the $200 from them, and therefore the plaintiffs had no valid lease. The court in giving the charge above quoted was giving to the jury the benefit of defendant's contention. In our opinion the instruction was more favorable to the defendant than he was entitled to. It must be noted that at the time the plaintiffs paid to Miss N. M. Todd the $200, she was the ostensible owner of the legal title to said property and in control of it. In addition to that the evidence discloses that the plaintiffs had been renting the property from Miss N. M. Todd from month to month for several months. There is no evidence that tends in any degree to show that the plaintiffs had any knowledge of the deed given by the said N. M. Todd to Blanche Todd in December, 1921. The plaintiffs were therefore in lawful possession of the premises and when later the defendant accepted a deed from the said Blanche Todd, plaintiffs were in open and peaceful possession of the premises and had paid their rent to a period several months subsequent to the date of the purchase of the premises by the defendant. He was bound, therefore, to take notice of plaintiffs' possession and to respect that possession unless and until their right to possession had been properly determined. The title to the real property was not involved except as it was introduced by the defendant. It was a collateral matter. The instruction complained of was given to

place the jury in a position to better determine the
good faith of plaintiffs in accepting the lease, not for
the purpose of submitting the title to the real prop-
erty. The good faith of plaintiffs under the lease
appeared to be questioned by defendant.

8, 9. Three of the assignments of error are based
upon the ruling of the court admitting testimony over
the defendant's objection tending to prove loss of
profits as an element of damages. There was evi-
dence to show that plaintiffs were and had been
for several months actually engaged in manufac-
turing and selling soap; that they had incurred
large expense in installing the necessary apparatus
for manufacturing soap; that they had sold soap for
several months and had at that time on hand a num-
ber of orders from different parties for soap. By
locking the doors to the basement and preventing the
plaintiffs from having access to their machinery, they
were deprived of conducting their business and lost,
therefore, not only the apparatus but also any profit
they would have made from the manufacture and de-
livery of the soap. The plaintiffs testified to the
facts showing the quantity of soap they had made and
sold; the quantity they had on hand; the actual cost
of manufacturing the soap, and the price they were
to receive. They also testified to the number of or-
ders on hand for soap, and the quantity of soap or-
dered. Plaintiffs did not attempt to prove profits by
an estimate of what they would have made if per-
mitted to operate their plant. The testimony was
confined to data and facts from which the jury might
compute the damages suffered by defendant's tortious
conduct with reasonable accuracy. That such evi-
dence was admissible where the pleadings laid the
proper foundation is well established: 28 Am. & Eng.

Ency. of Law, 731, § 6; 17 C. J. 794, 795, 913; *Cash* v. *Garrison,* 81 Or. 135 (158 Pac. 521); *McGinnis* v. *Studebaker,* 75 Or. 519 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868).

"The party damaged is not precluded from recovering anticipated profits merely because they are such, since the loss of anticipated profits is a damage that should be compensated for just as much as is the destruction of property."

Last case cited above, page 522 of official report. See, also, long list of authorities cited in page 523 of same report. 26 R. C. L. 1148, Section 63, states the rule thus:

"Damages, in addition to the value of the property taken, for any injury necessarily resulting from the conversion should be allowed."

Again, in 8 R. C. L. 501, Section 62:

"The earlier decisions both in England and in this country generally excluded profits altogether as an element of recoverable damages both in actions for breach of contract and in tort. But this rule, under more modern practice, has been generally abandoned in both classes of actions, and, as a result, the right to recover profits is now generally determined by the same rules as govern the recovery of other damages. It may therefore be said that lost profits are a proper element of damage when such loss is the direct and necessary result of the defendant's acts. * * , and where, in both classes of cases, such profits can be shown with a reasonable degree of certainty. Subject to these principles a recovery may be had for the loss of profits * * resulting proximately from the commission of a tort."

10, 11. The plaintiffs were engaged in manufacturing soap. The rule for the measure of damages under such circumstances is thus stated in 17 C. J. 913:

"The measure of damages for prevention of performance of a contract by which plaintiff is to manufacture and deliver certain articles at agreed prices, is the difference between the contract price and the cost of production, * * ."

The evidence in the instant case tends to establish the cost of manufacturing the soap, a quantity for which the plaintiffs had orders, and the price they were to receive. It is very manifest that the value of the personal property converted by the defendant would not compensate the plaintiffs for their loss. The general rule in actions for conversion is that plaintiffs can recover only the value of the property converted. This is so because the value of the property is ordinarily the full amount of the damages sustained by the plaintiffs: *Madden* v. *Condon Nat. Bank,* 76 Or. 362 (149 Pac. 80); *Backus* v. *West,* 104 Or. 129 (205 Pac. 533); *Hoskins* v. *Scott,* 52 Or. 271, 276, 277 (96 Pac. 1112); *Garbor* v. *Bradbury,* 106 Or. 493 (209 Pac. 477); *Brigham* v. *Carlisle,* 78 Ala. 243, 248 (56 Am. Rep. 28). Where other damages, however, naturally flow from the tortious act of the defendant with reasonable certainty, plaintiff is entitled to recover the amount thereof: *Cash* v. *Garrison,* above.

The reasons heretofore given are sufficient to sustain the court in refusing to give all of the instructions numbered 1, 2, 5, 6, 7 and 8, requested by the defendant and not given. These requested instructions cover the same ground as the assigned errors disposed of. Requested instruction No. 20 was as follows:

"You are further instructed that if you find that the defendant in this case did not know that the personal property alleged was owned by the plaintiffs and if you find that defendant in this case did not

know of the alleged lease, if you find there was such a lease, and if you further find that the defendant claimed no interest in the property himself and was willing to give it up upon being exonerated for its safe keeping then in that case the defendant is not guilty of conversion and your verdict must be for the defendant.''

The defendant was not entitled to this instruction. The plaintiffs were in the open possession of the premises. They had taken a lease from the ostensible owner. It was the duty of the defendant to have inquired about the right of the plaintiffs to the possession of the property. There was no evidence that plaintiffs had any knowledge that the record owner of the title had delivered a deed conveying the premises to defendant's grantor. Instead of defendant doing what the law required him to do under such circumstances he became a law unto himself and ruthlessly deprived plaintiffs of their property and destroyed their business. He constituted himself judge, jury and ''Lord High Executioner'' without so much as inquiring into the rights of the plaintiffs. He exercised dominion over the property belonging to the plaintiffs, totally deprived them of that property and prevented them from fulfilling their contracts with their customers. By doing this he assumed the risk and must take the consequences of his rash act.

12. The defendant sought to be relieved from liability by a conditional offer in his answer to return the property to plaintiffs. Plaintiffs were under no obligation to receive the property after its conversion by the defendant, particularly so when no offer to return was made until after the action for damages was commenced.

"When an actual conversion of goods has taken place, the owner is generally under no obligation to receive them back upon a tender by the wrongdoer, and even though the tender be accepted by the owner, this is generally regarded as no bar to the action." 26 R. C. L. 1113, § 24, 1155, § 71.

Another assignment of error was based upon the court's instruction submitting to the jury the question of punitive damages. The jury found no punitive damages. The verdict of the jury was both general and special. The only special damage was the $2,700 for loss of profits. The other two assignments of error require no discussion.

The judgment is affirmed.                AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.