Argued March 14; reversed July 7; rehearing denied
September 8, 1942

# RANDLES ET AL. *v.* NICKUM & KELLY SAND & GRAVEL CO.

(127 P. (2d) 347)

Before KELLY, Chief Justice, and BAILEY, LUSK, ROSSMAN and BRAND, Associate Justices.

*Harry Lehrer*, of Portland (Cookingham & Hanley, of Portland, on the brief), for appellant.

*Archie M. Hall*, of Portland (Moulton & Davis, of Portland, on the brief), for respondents.

LUSK, J. The plaintiffs recovered a judgment based on the verdict of a jury in an action for damages, both general and special, arising out of the conversion of a stock of lumber. The defendant has appealed,

and assigns as error rulings of the trial court admitting evidence respecting loss of anticipated profits and submitting to the jury the question of the right of the plaintiffs to recover damages on account thereof.

The plaintiffs were engaged in the business of manufacturing finished lumber at Vancouver, Washington, and of building houses in Portland, Oregon. About May 1, 1939, they rented space in the defendant's warehouse in Portland for the purpose of storing lumber to be used in their building operations. There is substantial evidence that on December 21, 1939, the defendant converted this stock of lumber by denying to the plaintiffs access to the portion of the warehouse which they had rented. The plaintiffs alleged in their complaint and attempted to prove that they were prevented by this wrongful act from completing the performance of several contracts for the construction of houses, on each of which they would have made a substantial profit. The trial judge withdrew from the jury consideration of profits thus anticipated on all the contracts except two, but as to these two submitted to the jury the question of whether the plaintiffs were entitled to recover damages not in excess of $1,600. The jury returned a verdict in favor of the plaintiff in the sum of $3,880 with no segregation as between general and special damages.

■■ The question for us to determine is whether the proof measures up to the requirements of the law governing the right to recover damages for anticipated profits in a tort action. The general rule is that such profits are a proper element of damage when the loss is the direct and necessary result of the defendant's acts and the profits can be shown with a reasonable degree of certainty. Damages which are speculative and contingent may not be recovered. *Krause v.*

*Bell Potato Chip Co.*, 149 Or. 388, 394, 39 P. (2d) 363; *Preble v. Hanna*, 117 Or. 306, 244 P. 75; *Anderson v. Columbia Contract Company*, 94 Or. 171, 184 P. 240, 185 P. 231, 7 A. L. R. 653; *McGinnis v. Studebaker Corp.*, 75 Or. 519, 522, 146 P. 825, 147 P. 525, L. R. A. 1916B, 868, Ann. Cas. 1917B, 1190; *Fields v. Western Union Telegraph Co.*, 68 Or. 209, 217, 137 P. 200; *Hoskins v. Scott*, 52 Or. 271, 96 P. 1112; *Blagen v. Thompson*, 23 Or. 239, 254, 31 P. 647, 18 L. R. A. 315; Restatement, Torts, § 912d, illustration 7, p. 581; 15 Am. Jur., Damages, 571, § 155. As stated by Mr. Justice ROBERT S. BEAN in *Blagen v. Thompson*, supra:

"The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result but uncertain in amount."

■ We think that the rulings complained of were erroneous for two reasons.

First, the evidence that profits would have been made had the houses been completed is a mere estimate of the plaintiffs. They contracted to build the houses at an agreed price, and they testified that the cost of construction in each instance would have been about $800 less than the contract price, hence a profit of $800 on each house. This, they said, was the normal profit. They produced no supporting data from which the jury could have ascertained whether a profit of $800 or in any other amount would have been realized. There was no testimony that the plaintiffs had ever

made a profit under similar contracts. One of the plaintiffs testified:

"Q. I assume that all jobs that you have taken have been profitable?

"A. Oh, no, sir.

"Q. And sometimes you make losses?

"A. Sure.

"Q. Of course, you can't tell that until you have completed your job; isn't that right?

"A. Generally not from the beginning.

"Q. I mean you take a loss job?

"A. I have done it."

We take judicial notice that the business of building houses for an agreed price is highly speculative in its nature, and we think that to sanction the recovery of damages for which there is no firmer foundation than is found in the present record would be practically to remove all the safeguards which the law has wisely thrown around claims of this character. Absolute certainty that there would have been profits, or certainty as to their amount, is, of course, not required. But it is essential that the plaintiff "present such evidence as might reasonably be expected to be available under the circumstances". Restatement, Torts, 580, § 912. See, 15 Am. Jur., Damages, 574, § 157, where the author says: "The proof must pass the realm of conjecture, speculation or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn", citing *Homestead Co. v. Des Moines Electric Co.* (C. C. A. 8th) 248 Fed. 439, 12 A. L. R. 390.

Manifestly the proof here falls far short of meeting these tests.

■ Secondly, the evidence fails to show with reasonable certainty that the conversion was the cause of the plaintiffs' failure to complete the construction of the houses. The plaintiffs had agreed to pay the defendant $10 a month as rental for the warehouse space where they stored their lumber. They failed to pay this modest sum, evidently because of inability to do so. They testified that they were unable to go into the open market and purchase lumber in place of that which the defendant had converted because they had neither money nor credit. They allege in their complaint that their credit was destroyed by the wrongful act of the defendant, but this allegation is unsupported in the evidence because there is no proof that any one outside of the immediate parties had ever heard of the conversion. They argue that their credit was good until the time of the conversion, but neither is this established. The only testimony on the point is that when they commenced their building operations in the spring of 1939 their credit was good. There is no room for the presumption that this condition continued until the day of the conversion, December 21, 1939, because, as counsel for the plaintiffs say in their brief, ''the conversion took place in the course of a misconceived and misguided, illegal and extra-legal collection effort, instituted by appellant to short-cut the usual collection channels.'' This statement is based upon the evidence, which shows that the plaintiffs' credit was not good for $10 a month rent.

There is evidence, it is true, that at the time of the conversion construction of the houses had reached the point where the plaintiffs had need for some of the converted lumber. But there is no evidence that they could have completed the houses with the lumber alone or without the expenditure of money for other ma-

terials and labor. Obviously they required either money or credit for the fulfillment of their contracts. They had neither. How then can any one say that the defendant's act in converting the lumber rather than the plaintiffs' hopeless financial condition brought about the alleged loss?

The proof of proximate cause is wanting here as it was in *Stubblefield v. Montgomery Ward & Co.*, 163 Or. 432, 96 P. (2d) 774, 98 P. (2d) 14, 125 A. L. R. 1228, a case of high analogy—where we held that the breach of the defendant's agreement to do the plumbing work in a hotel building in course of construction could not be deemed the cause of the plaintiff's failure to complete the hotel, it appearing that the plaintiff was financially embarrassed and did not prove that he had borrowing power. This is an even stronger case for disallowing the claim for consequential damages, because here the plaintiffs themselves furnished affirmative proof that they lacked the means to complete their contracts.

The plaintiffs rely mainly on *Preble v. Hanna,* supra, a conversion case in which the court held that the defendant, who had wrongfully locked the plaintiffs out of leased premises, was liable for the loss of profits which the plaintiffs would have made from the business of manufacturing soap conducted on such premises. That this case is clearly distinguishable we think sufficiently appears from the following excerpt from the opinion (117 Or. 315):

> "There was evidence to show that plaintiffs were and had been for several months actually engaged in manufacturing and selling soap; that they had incurred large expense in installing the necessary apparatus for manufacturing soap; that they had sold soap for several months and had at that

time on hand a number of orders from different parties for soap. By locking the doors to the basement and preventing the plaintiffs from having access to their machinery, they were deprived of conducting their business and lost, therefore, not only the apparatus but also any profit they would have made from the manufacture and delivery of the soap. The plaintiffs testified to the facts showing the quantity of soap they had made and sold; the quantity they had on hand; the actual cost of manufacturing the soap, and the price they were to receive. They also testified to the number of orders on hand for soap, and the quantity of soap ordered. Plaintiffs did not attempt to prove profits by an estimate of what they would have made if permitted to operate their plant. The testimony was confined to data and facts from which the jury might compute the damages suffered by defendant's tortious conduct with reasonable accuracy.''

Thus, under the evidence in the Preble case, there was no reason for doubting that it was the defendant's wrongful act and not some other cause which made impossible the performance of the plaintiffs' contracts, and the proof of damage did not consist, as it does here, of mere estimates of what the plaintiffs would have made if they had been permitted to carry on their business.

■ The plaintiffs have asked us, in the event that we should sustain the claim of error, to disregard the error and to affirm the judgment because there is substantial evidence that the value of the converted lumber was in excess of the amount of the verdict. We have read the testimony and find that, if the opinions of witnesses on behalf of the defendant are to be accepted, the verdict should have been very much less. We are unwilling to undertake the task of resolving

these conflicts. Had the item of special damages been segregated in the verdict, it could have been eliminated here and the judgment otherwise affirmed. This is the course which prudence would have dictated, but, since it was not taken and we are unable to say that the jury did not include an allowance of damages for anticipated profits in the verdict, we have no other alternative than to remand the case for a new trial.

It is unnecessary to discuss the other assignments of error in defendant's brief. The judgment is reversed and the cause remanded for further proceedings.