Argued June 3, reversed July 1, 1970
DOUGLAS CONSTRUCTION CORPORATION,
*Respondent, v.*
MAZAMA TIMBER PRODUCTS, INC.,
*Appellant.*
471 P2d 768

*Max S. Taggart, II,* Springfield, argued the cause for appellant. With him on the briefs were Jack B. Lively and Sanders, Lively & Wiswall, Springfield.

*Randolph Slocum,* Roseburg, argued the cause and filed a brief for respondent.

TONGUE, J.

This is an action by a road construction contractor against a logging operator for damages for breach of an oral contract under which plaintiff was engaged by defendant to remove rock from two quarries and to load, haul, spread and compress the rock on a timber access road, at a specified rate per cubic yard of rock "in place." As damages resulting from the improper termination of that contract, plaintiff seeks to recover profits which it claims that it would have made if permitted to complete performance of the contract.

Defendant appeals from a verdict and judgment of $6,000, contending that the court erred in overruling defendant's motions for involuntary nonsuit and for a directed verdict. The single issue on appeal is whether plaintiff offered sufficient evidence to support any award for alleged loss of profits.

The only evidence offered by plaintiff on this issue was the testimony of its president, who had been engaged in such work for 31 years and who testified that at the time of the termination of the contract, after hauling 8,000 cubic yards of rock, at least 14,000 cubic yards would have been required to complete

the contract and that "we would have made a profit if we had done the job of approximately 60 cents per yard."

No evidence was offered to show either the actual or estimated cost of completing the contract, either as a whole or for each of the various operations involved, such as for the preparation of the road bed by "pulling" the ditches, the drilling and "shooting" of rock at the quarries, the loading of rock into trucks, the hauling of rock to the road, and the spreading and "compaction" of the rock, as well as for such items as labor, maintenance and overhead, among other items of cost properly chargeable to the performance of such a contract.

In addition, no evidence was offered to show the amount of previous profits, if any, made by plaintiff on other operations, much less on other similar operations. On the contrary, it was admitted that plaintiff suffered a loss in placing the initial 8,000 cubic yards of gravel on the roads in question, for which plaintiff was paid in full, although some items of cost might otherwise have been "spread" over all or a portion of the remaining work to be done, but for the improper termination of the contract.

There was also uncontradicted evidence that the weather was extremely bad during the period in question, with both rain and snow, and that weather is related to "the expense involved * * * in the rocking of a roadway" in that "the more it rains the muddier it gets and it is that much harder to get through" and requires "a lot more time."

Plaintiff contends that testimony of a man with 31 years of experience that the net profit would have been 60 cents per cubic yard was "the type of proof that the law requires—the difference between the con-

tract price and the cost of doing the work"; that "the witness was never required to segregate the various items of expense" and that "it would have been a simple matter for the appellant, on cross-examination, to have arrived at any itemization which it may have required."

As the party with the burden of proof, however, plaintiff could not properly complain that defendant, on cross-examination, did not develop facts relating to actual costs and other facts from which it might have been possible to determine whether plaintiff would have made a profit on this contract and, if so, the amount of such profit. Thus, the question presented by this case is whether the opinion of an experienced contractor that a profit of 60 cents per cubic yard of gravel would have been made on 14,000 cubic yards of gravel if plaintiff had been permitted to complete the contract, unsupported by evidence of actual costs or other supporting facts, is alone sufficient to support a verdict and judgment for alleged loss of profits, particularly in a case in which plaintiff concedes that "it would have been a simple matter" to provide such an "itemization" as "may have been required."

Plaintiff also concedes that "proof in a case involving a claim for loss of profits must establish that profits were reasonably certain to accrue," but contends that "certainty as to the amount is not fatal, but an uncertainty as to whether any benefit or gain would be derived bars a claim for damages founded on alleged profits," citing *Randles v. Nickum & Kelly Sand & Gravel Co.*, 169 Or 284, 287, 127 P2d 347 (1942). Similarly, plaintiff contends that "it is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from prox-

imate estimate of witnesses, a satisfactory conclusion can be reached," citing *Buck v. Mueller*, 221 Or 271, 283, 351 P2d 61 (1960). Other less recent cases are also cited by plaintiff in support of these contentions, but none is directly in point.

It is true that in *Randles* this court, at p 287, approved the proposition that the rule that damages which are uncertain or contingent cannot be recovered applies only in determining whether there would have been any gain or benefit from the performance of a contract and "does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract." In that case a building contractor testified that he would have made a profit of $800 on each of several houses being built by him under separate contracts, as the "normal profit" for each house.

It was held by this court in that case, however, that such testimony was insufficient to support an award for loss of profits, stating, at pp 287-88, that an award of damages for an alleged loss of profits by a contractor cannot be sustained where it is based upon "mere estimate" as to the amount of the alleged profit, without "supporting data," and with "no testimony that the plaintiff had ever made a profit under similar contracts," and in a busines recognized to be "highly speculative in its nature."

Thus, this court concluded (at p 288), quoting with approval from 15 Am Jur 574, Damages § 157 that:

> "The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn."

This is in accord with the rule as stated in the Restatement of Contracts § 331 (previously approved by this court in *Stubblefield v. Montgomery Ward & Co.*, 163 Or 432, at 447-48, 96 P2d 774 (1940)), as follows:

"(1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their *amount* in money with reasonable certainty.

"(2) Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevents the use and operation of property from which profits would have been made, damages may be measured by the rental value of the property or by interest on the value of the property." (Emphasis added)[1]

Other Oregon cases in which claims for alleged loss of profits have been denied for lack of sufficient evidence include: *Western Rebuilders v. Felmley*, 237 Or 191, 203, 391 P2d 383 (1964) ("loss of future profits must not be uncertain and speculative"); *Stubblefield v. Montgomery Ward & Co., supra*, at 453 ("the evidence must afford 'a sufficient basis for estimating' the amount of damages" and with "reasonable certainty"); *Solomon v. Kenner*, 121 Or 407, 412, 255 P 471 (1927) ("naked conclusion" that a profit of ten per cent would have been earned in the construction of a building held insufficient); *Hagestrom v. Sweeney*, 60 Or 433, 435-36, 119 P 725 (1912) ("opinion" testimony relating to amount of rock to be removed to complete a contract and its cost of removal, without supporting data, held insufficient). Similarly, in

---

[1] No evidence was offered in this case to show the rental value of any of the heavy equipment or other property involved or the interest on the value of such equipment or other property. Instead, plaintiff's claim was limited to one for alleged loss of profits.

*Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 194, 291 P2d 709 (1955) it was held that an "estimate" that it would cost $2.50 per thousand feet of timber cut to pile and burn slash was "speculative." *Cf. Preble v. Hanna,* 117 Or 306, 315, 244 P 75 (1926) (affirming award for loss of profits based on data and facts relating to actual costs). See also *Cluck v. Fish,* 230 Or 63, 66, 368 P2d 626 (1962) and *Carlson v. Steiner,* 189 Or 255, 266-67, 220 P2d 100 (1950).

It is true that in *Smith v. Abel,* 211 Or 571, 586-91, 316 P2d 793 (1957), we held that there was sufficient evidence of lost profits to go to the jury in a case in which the owner of a sawmill testified that he would have made a profit of $10 to $12 per thousand on rough lumber. In that case, however, such "supporting data" as was available was offered in evidence, including the profit and loss statement of the business, as well as the testimony of an accountant.

In this case, however, as in *Randles,* the fundamental basis for plaintiff's claim of damages for alleged loss of profits was the opinion testimony, or "estimate," by plaintiff's president that if plaintiff had been permitted to complete performance of the contract it would have made a net profit of 60 cents per cubic yard for 14,000 cubic yards, or the sum of $8,400, without "supporting data" of any kind.

Also, as in *Randles,* this court must recognize that the business of a logging road contractor is "highly speculative in nature" and whether any profit or loss is made under any particular contract will depend upon many intangible factors, such as the effects of weather and the particular terrain involved, among others. It would thus appear to be clear that the testimony in this case on the issue of damages fails to

satisfy the requirements stated by this court in *Randles v. Nickum & Kelly Sand & Gravel Co., supra.*

It is true that in *Buck v. Mueller,* 221 Or 271, 351 P2d 61 (1960), also relied upon by plaintiff, this court stated (at p 283) that a claim for loss of profits may be allowed "if, from proximate estimates of witnesses, a satisfactory conclusion can be reached." The court went on to hold, however, that:

> "If the business has not operated long enough to establish a reliable record of profits, the jury will not be permitted to speculate upon the probable success of the particular business alleged to have been harmed."

This same holding had been previously indicated, if not expressly stated, in *Randles v. Nickum & Kelly Sand & Gravel Co., supra,* at 287, in commenting that under the facts in that case "there was no testimony that the plaintiffs had ever made a profit under similar contracts." To the same effect, see the more recent case of *Western Rebuilders v. Felmley, supra,* at 203.

In this case no evidence was offered that plaintiff had ever made a profit on any previous road construction job, much less that it had established a "reliable record of profits." Thus, under the rule of *Buck v. Mueller,* as well as that of *Randles v. Nickum & Kelly Sand & Gravel Co.* and other decisions by this court, as cited above, plaintiff's claim for alleged loss of profits must be considered as "uncertain and speculative", and must be denied.

Indeed, to sustain recovery of alleged lost profits in this case would require this court to go much further than it has gone in any previous case. This is not to say that the *amount* of alleged lost profits must be established with the same certainty as is required in

determining whether *any* profit would have been earned or that "supporting data" for all items of cost must necessarily be proved. We hold, however, in accordance with the rule previously established by this court, that the amount of alleged profits must nevertheless be proved with *"reasonable certainty"* and that this rule has not been satisfied where proof of at least some supporting data is admitted to be "a simple matter," and where there is no evidence that the business has earned such a profit in the past, particularly where the business is speculative in nature in the sense that whether any profit is made on any particular contract will depend upon many intangible factors.

Reversed.