Argued July 17, affirmed as modified September 23, 1970

# BENNETT VENEER FACTORS, INC., *Appellant,* v. TOMCO, INC., *Respondent.*

474 P2d 519

R. *Alan Wight*, Portland, argued the cause for appellant. With him on the briefs were King, Miller, Anderson, Nash & Yerke, and Frederic A. Yerke, Portland.

*Robert G. Danielson*, Sweet Home argued the cause for respondent. With him on the brief was Leo Levenson, Portland.

Before O'Connell, Chief Justice, and Sloan, Holman and Howell, Justices.

SLOAN, J.

This is a suit in which plaintiff seeks to enjoin defendant from allegedly violating the terms of a written agreement made between the parties. A copy of the agreement as set forth in plaintiff's brief is attached at the end of this opinion. We have eliminated certain parts of the agreement that are not essential to this opinion. The suit is essentially one for specific performance of the agreement. The trial court found against plaintiff and plaintiff appeals.

The pertinent paragraph of the agreement for our purposes is that which provides that plaintiff (designated in the agreement as BVF), agrees to loan money to defendant. The trial court found that plaintiff violated this portion of the agreement and that a subsequent cancellation of the agreement by defendant was justified by reason of plaintiff's violation of that agreement.

Circumstances giving rise to the agreement were that defendant was at the time the operator of a sawmill in Cascadia, Oregon. In order to better utilize the timber available to him, he contemplated adding to his mill a veneer plant in which he would cut veneer from

9 to 10 feet in length. Mr. Bennett who was the principal owner and operator of plaintiff corporation and Mr. Horner, who was principal owner and operator of defendant corporation were the real parties involved in the negotiations for and the signing of the agreement and for later developments. At the time this agreement was entered into, Horner and his corporation were in financial straits and possessed no assets which would permit him to obtain borrowed money from the usual lending institutions.

■ There was substantial dispute in most of the testimony of the parties relating to what was meant by the particular paragraph providing for the loans, what prompted its inclusion in the agreement and whether or not it was intended to mean that plaintiff would loan the money on defendant's request. The paragraph recites that the BVF agrees to loan on a short time basis the sum of $10,000 on April 22 and further agrees to loan up to $25,000 on short time loans secured in accordance with our bank requirements provides the principal basis of the conflict. The evidence is conflicting and confusing as to whether or not the $10,000 loan was ever requested. However, the important phase of the case relates to the $25,000 loan provision. Bennett testified that in all the negotiations leading to the written agreement the conversations of the parties was that Bennett would help defendant obtain bank financing rather than Bennett himself loan the money to defendant. Bennett's testimony was that the failure to obtain the money resulted from defendant's (Horner's) refusal to provide financial statements. Bennett's version of the agreed meaning of the words "in accordance with our bank requirements" was that plaintiff would only be required to assist defendant in obtaining bank loans. This is somewhat refuted by the

last paragraph of the agreement itself in which it is stated "I can then present this to my bank and prepare to loan you the money."

Horner testified that he was just recovering from insolvency and was operating with extremely limited finances and that Bennett knew this and also Bennett knew that Tomco, Inc., could not make a financial statement acceptable to any bank. Horner stated that Bennett was also aware that Tomco could not borrow from the usual banking sources and that Bennett promised to produce the money on demand. Horner also testified that Bennett told him that the only purpose of the written agreement was to enable Bennett to demonstrate to Bennett's bank that he had a valid, valuable contract on which the bank would loan money to Bennett, not to defendant.

In view of this conflict we rely on the trial court's opportunity to observe and weigh this oral testimony and resolve this conflict in defendant's favor.

■ The record convinces us, as it did the trial court, that the provisions for the loan were crucial to the contract and critical to defendant's ability to build a veneer plant. We are also convinced by the record that defendant, at that time, had no other sources of money and when the time came that defendant did demand of plaintiff that he make the $25,000 loan provided for in the agreement, that plaintiff was simply unable to and did not comply with the agreement. At the time, defendant was desperately in need of the money and was required to seek other sources. Shortly thereafter defendant notified plaintiff that he was cancelling the agreement. As indicated above, we are convinced by the record that when plaintiff was unable to perform,

defendant was justified in cancelling the agreement; that this was a material breach and excused performance by defendant. *Prime v. Prime,* 1943, 172 Or 34, 139 P2d 550. We, therefore, affirm the trial court's decision to refuse to allow specific performance of the contract.

■ As part of the decree entered herein the court allowed plaintiff the sum of $750 as reimbursement for expenses incurred by plaintiff prior to cancellation of the agreement. Defendant cross-appeals from that part of the decree.

There is evidence indicating that plaintiff did expend money but the record is devoid of any evidence which justifies an award of $750 to $5 or $5,000. Assuming such an award was proper under the circumstances, which we do not decide, we can find no evidence which reports the allowance of the $750 or any other specific sum. See *Douglas Const. v. Mazama Timber,* 1970, 256 Or 107, 471 P2d 768.

In view of the lack of evidence supporting such an award we are obliged to modify the decree to that extent.

The decree is, therefore, affirmed, except it is modified to eliminate the amount of the $750 provided by the trial court.

## APPENDIX

### APPENDIX A

#### LETTER AGREEMENT
(Omitting formal parts)

Confirming Wednesday's meeting, Bennett Veneer Factors will represent your veneer production on an exclusive basis.

All orders will be subject to your acceptance as to species, grade, and price. Copies of invoices will be forwarded with our check less 5% commission and 2% cash discount within 10 days of shipment and receipt of your invoice. BVF will not represent any other mill in your locality without your written approval.

Initial term will be for five years beginning July, 1966 or prior if the mill starts up before that date.

All inquiries are to be referred to BVF and BVF will settle all claims up to $100.00 and any such deductions will be reduced in proportion from our commission; so your office will know we make every effort to obviate claims. In that connection, you agree to produce green veneer in accordance with commercial standards as they are amended from time to time.

BVF agrees to loan you on a short term basis $10,000.00 on April 22, for a timber deposit if you so require. Further, it agrees to loan up to $25,000.00 on short term loans secured in accordance with our bank requirements. We presume we will be repaid at the rate of $50.00 to $100.00 per car plus the usual bank interest, which I understand is 7% today.

BVF will set up your order file by truck and carload in consideration of your log inventory and the market. We will set up a standard operating procedure for your mill and personnel and expect you to visit with us some of the mills we ship to, so you personally know the firms with whom we do business.

Please sign this for your company and personally, keeping one copy for yourself and returning the other to me. I can then present this to my bank and

prepare to loan you the money, should you find you require same upon your return from Europe. I am sure this will be a forerunner of a long and rewarding association, Amos, and am delighted we will be again working together. Have a good trip.