Argued and submitted May 29, affirmed in part,
reversed and remanded in part December 10, 1979

VALLEY INLAND PACIFIC
CONSTRUCTORS, INC.,
*Appellant and Cross-Respondent,*

*v.*

CLACKAMAS WATER DISTRICT NO. 2,
*Third Party Respondent and Cross-Appellant,*

*v.*

CH2M HILL, INC.,
*Third Party Respondent and Cross-Appellant.*

(No. 76-7-6, CA 11243)

603 P2d 1381

[528-a]

Elizabeth Yeats, Portland, argued the cause for appellant and cross-respondent. With her on the briefs were Daniel J. Seifer and Kobin & Meyer, Portland.

Patric J. Doherty, Portland, argued the cause for third party respondent and cross-appellant Clackamas Water District No. 2. With him on the briefs were Rankin, McMurry, Osburn, Gallagher & VavRosky, Garry P. McMurry and Stoddard D. Jones, Portland.

Peter L. Barnhisel, Corvallis, argued the cause for third party respondent and cross-appellant CH2M

Hill, Inc. With him on the briefs was Fenner, Barn-hisel & Morris, Corvallis.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph,* Judges.

THORNTON, J.

---

* Joseph, J., did not participate in this decision.

## THORNTON, J.

This is an action for damages claimed by the contractor for breach of a contract to construct a reservoir. Plaintiff Valley Inland Pacific Constructors, Inc. (VIPCO), was the general contractor on the job. Defendants are Clackamas Water District No. 2 (District), the public body for which the reservoir was being constructed, and Cornell, Howland, Hayes & Merrifield/Hill (CH2M), the engineering firm in charge. The District counterclaimed against VIPCO for allegedly defective work and late completion. The District also filed a third party complaint against CH2M for any damages awarded VIPCO. After a trial on the merits, the trial court gave judgment for VIPCO for part of its claim but denied other parts. Further, the court denied the District's counterclaim against VIPCO but allowed the District recovery on its third party complaint against CH2M. VIPCO appeals; District and CH2M both cross-appeal.

VIPCO assigns the following as error:

1) Denial of damages for delay in furnishing the jobsite including extended overhead, increased labor costs, loss of labor productivity and added expense of pouring, curing and finishing concrete;

2) Denial of damages for extra costs incurred as a result of the allegedly defective condition in which the site was turned over to VIPCO;

3) Refusal to compel production of certain handwritten notes shown to VIPCO's president and attorney in the course of settlement negotiations, and

4) The award of interest at 6 percent per annum rather than 1 percent per month on the balance due under the contract.

The essential facts are as follows:

The parties signed a contract on March 19, 1973, for construction of the 10,000,000 gallon Mather Road

reservoir. When VIPCO submitted its bid on March 1, 1973, the proposal called for the excavation work to be completed by Elte, Inc., the other prime contractor, and the site to be made available to VIPCO by March 25, 1973. Construction was to take 300 days until January 13, 1974.

VIPCO estimated the concrete work would take four and a half months and expected to complete this work in early fall before the advent of winter weather. However, Elte did not complete excavation until June 4, 70 days late, and VIPCO was further hampered by an operating engineers' strike which shut down work altogether between July 27 and August 24. About November 1, it began to rain heavily and VIPCO sustained, by its own reckoning, 62 days of weather-related delays before completing the concrete work in mid-April, 1974.

VIPCO suffered other delays as a result of extra repairs, disputes as to workmanship and rescheduling difficulties. The parties agreed to contract extensions totaling 190 days until July 23, 1974. VIPCO requested other extensions which were denied by the District. The project was completed on October 8, 1974.

During the course of the project, numerous disputes arose, many of which stemmed from the asserted unsafe and non-conforming condition in which Elte left the jobsite. VIPCO accepted the site with reservations but the parties never agreed who should bear the cost of correcting the defects. VIPCO incurred additional expense in protecting its work in progress and repairing damage caused by mudslides from the excavation stockpiles. Among the damages claimed are: (1) repairs to the valve vault for cleaning up a slide; (2) replacement of damaged pipe; (3) costs of repairing crane mats used in cleaning up a slide area; and (4) refusal of the District to pay VIPCO for assuming responsibility for site safety pursuant to an agreement between VIPCO and CH2M.

VIPCO's obligations included backfilling around the reservoir, under drains and footings and around other concrete structures. Backfill material for the reservoir was to be obtained from two piles of soil overburden excavated by Elte totaling approximately 23,000 cubic yards. Fill was to be laid in six inch layers all around the reservoir (which was 36 feet high) and compacted to 90 percent of maximum density. Because of this requirement, the trial court found that the overburden piles, which contained large numbers of rocks and boulders, were unsuitable for backfill, and VIPCO incurred the cost of segregating these rocks.

VIPCO was awarded damages from the District for the added cost of constructing a motorcycle club access road for which a base course had not been specified, for extra work in the valve vault and for repairing the spalling condition (cracking and flaking of concrete) inside the reservoir. The trial court attributed all three to CH2M's negligence and ordered CH2M to indemnify the District. CH2M's cross-appeal involves only the access road and the valve vault.

After completion of the job, the parties met to discuss settlement of VIPCO's various claims. At the meeting, CH2M apparently showed VIPCO's president and attorney several vaguely described handwritten notes relative to CH2M's assessment of the value of VIPCO's claims. VIPCO requested production of these notes, which request was denied by the presiding judge. The trial court refused to reconsider this ruling.

## CAUSATION OF DELAY[1]

The question of causation is one of fact, *Celorie v. Roberts Bros., Inc.,* 202 Or 671, 682, 276 P2d 416

---

[1] As a preliminary matter, the District alleged, and the trial court concluded, that VIPCO had breached the contract by failing to give notice of damages it expected to sustain as a result of the late start. We need not decide this question because there is substantial evidence supporting the trial court's determination that VIPCO failed to meet its burden of showing that delay in furnishing the site, as opposed to delay from the strike or from VIPCO's own mistaken estimate or inefficiency, was the cause of the damage.

(1954), *overruled on other grounds Robbins v. Steve Wilson Co.,* 255 Or 4, 12, 463 P2d 585 (1970), and we confine our review to whether the trial court's conclusion is supported by any evidence. We so find. VIPCO offered the testimony of its president and vice president that the four and a half month estimate was based on examination of job records from a prior reservoir job of similar size and design with which they had been involved while employed by another company. Concrete work on that project had taken five and a half months but, because the present reservoir had fewer columns, wall segments and total concrete, they felt the work would take less time.

VIPCO argues that this testimony amounts to an unimpeached expert opinion which must be accepted by the trier of fact. *Tate v. Emery,* 139 Or 214, 9 P2d 136 (1932). While this testimony is entitled to some weight, it is not necessarily sufficient *per se* to establish the validity of the estimate as a basis for determining damages. Though undisputed, the testimony is not binding as a matter of law. *Douglas Const. v. Mazama Timber,* 256 Or 107, 111, 471 P2d 768 (1970).

The first weather-related delay in pouring concrete did not occur until October 31, 1973. At this point, VIPCO had been on the jobsite nearly five months, including the period of the strike. By its own reckoning, VIPCO suffered weather delays of 62 days, including weekends and holidays, during the winter. Yet the last roof pour was not made until mid-March, 1974.[2] These rough figures suggest the concrete work took at least seven and a half months. Even if the site had been available on time, performance would have run into the winter months.

The trial judge concluded:
    "It is speculative and uncertain that extended overhead costs of plaintiff for 62 days' extension of

---

[2] The mid-March date is the date of the last *pour* and does not take into account curing or finishing time which are also affected by bad weather nor the fact that the valve vault was not finished at this point.

the project were incurred as a result of plaintiff's being delayed in starting work on the project. Perhaps a portion of such could be attributed to the delay in starting the project; however, the evidence fails entirely to form a basis for such determination."

VIPCO had the burden of establishing with reasonable certainty that the District's breach caused the damages complained of, *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61 (1960). Where more than one possible cause of damage appears, the plaintiff must eliminate causes other than those for which the defendant is responsible. *Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 206, 291 P2d 709, 56 ALR2d 382 (1955). Since VIPCO failed to segregate those damages for which the District alone was responsible, we cannot say that the trial court erred in denying these claims.

## PRODUCTION OF THE HANDWRITTEN NOTES

The trial judge refused to order production of the handwritten notes on the authority of ORS 16.740[3] because the motion had previously been denied by the presiding judge of the circuit court. Refusal to consider the matter could constitute error since the trial judge is responsible for correcting prior rulings of this sort to avoid retrial. *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 407, 281 P2d 707 (1955); *State ex rel Dept. of Trans. v. Glenn,* 35 Or App 413, 416-17, 582 P2d 432 (1978), *aff'd as modified* 288 Or 17, 602 P2d 253 (1979). If, however, the decision of the presiding judge was correct, the later ruling had no effect on the outcome of the litigation and does not require reversal.

---

[3] ORS 16.740 provides:

"If a motion made to a judge of the court in which the action, suit or proceeding is pending is refused in whole or in part, or is granted conditionally, no subsequent motion for the same order shall be made to any other judge. A violation of this section is punishable as a contempt, and an order made contrary thereto may be revoked by the judge who made it, or vacated by the court or judge thereof in which the action, suit or proceeding is pending."

[533]

VIPCO's initial motion was made under ORS 41.615(1)(a)[4] which precludes production of privileged material.

The notes were shown to VIPCO's president and attorney in the course of settlement negotiations and were characterized as containing CH2M's opinion as to the sums to which VIPCO was entitled. No offer of proof was made and no more specific indication of the notes' contents appears in the record. Offers of compromise are generally privileged and therefore undiscoverable, although admissions of particular facts made during negotiations may be proved. ORS 41.810. Without some further evidence of what these particular facts were, our review of the matter is precluded.

## BACKFILL COSTS

The trial judge found VIPCO had the right to rely on the contract documents in submitting its bid because the excavation work had not yet been performed, and concluded that the District breached its contract in failing to furnish suitable backfill material. It went on to find, however, that no damages could be assessed because VIPCO did not establish a basis for determining what the work would have cost in the absence of breach.

It was undisputed that the actual cost of backfilling the reservoir was $30,009. To prove what this operation would have cost had rocks and boulders not been present, VIPCO's only evidence was the testimony of

---

[4] ORS 41.615 provided in pertinent part:

"(1) Upon motion of any party showing good cause therefor, and upon notice to all other parties, and subject to the provisions of ORS 45.181, the court in which a proceeding is pending may:

"(a) Order any party to produce and permit the inspection and copying or photographing, or by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by ORS 45.151 and which are in his possession, custody or control * * *.

" * * * * *."

[534]

its president, based on his bid estimate, that it would have cost $10,440. The trial court found as follows:

> " * * * Plaintiff's bid for earthwork was in the amount of $47,600. Earthwork in addition to backfill against the reservoir wall included other work on backfill for pipes, concrete structures, gravel under footings, and around drains and backfill around the pumping station. There is no evidence of a breakdown of the $47,600 at the time of bid submission, as to what part of this figure was attributed to each earthwork project. Plaintiff on October 9, 1977, in retrospect prepared an estimate of costs of reservoir backfill had rock and boulders not been present, at $10,440 of the $47,600. Plaintiff claims actual cost was $30,000. *It is difficult to give credence to plaintiff's estimate in retrospect since it would appear from the evidence that the reservoir backfill work was a major portion of the earthwork to be done under the contract,* and further there is no evidence that such retrospective estimate was based upon notations, memoranda or figures made at the time of the bid by plaintiff. * * * Such estimate is speculative, uncertain, unreliable and without foundation and cannot form a basis for determining damages. * * *" (Emphasis added.)

The trial judge sitting without a jury is the ultimate decider of fact. As such, he may reject any evidence, though uncontradicted, which he finds inherently improbable. *Douglas Const. v. Mazama Timber,* 256 Or 107, 110, 471 P2d 768 (1970).

## INTEREST

The trial court awarded VIPCO the contract balance held as retainage thereon with interest at 1 percent per month from December, 1974. Upon motion of the District the court modified the interest rate to 6 percent per annum pursuant to ORS 279.575(4)[5] (added in 1977) on the theory that the contract balance was awarded as a judgment.

[5] ORS 279.575(4) provides:

"The public contracting agency shall pay, upon settlement * * * in favor of the contractor regarding any dispute as to the compensation

At the time the contract was signed, the only applicable provision was ORS 279.575(5), which provided interest at 1 percent per month.[6] The general rule is that a statute will not be applied retroactively if it alters the rights and duties under an existing contract unless expressly intended by the legislature. *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 539 n 7, 577 P2d 477, *cert den* 439 US 1051 (1978). The right to interest on retained sums is such a right.

The principal purpose of retainage is to enable a contracting municipality to discharge any potential liens for labor or materials in the event the contractor fails to do so. ORS 279.314; *School Dist. No. 1 v. Rushlight & Co.,* 232 Or 341, 349-50, 375 P2d 411 (1962). No such issue was raised in this case. Moreover, the contract provided for a performance bond to cover, among other things, any defects in workmanship during the one year warranty period following completion. It would be anomalous to permit an owner to withhold payment, proceed to judgment or settlement, and thereby cut the interest in half.

---

due a contractor for work performed under the terms of a public contract, the amount due plus interest at the rate of six percent per annum on such amount accruing from the later of:

"(a) The due date of any progress payment received under the contract for the period in which such work was performed; or

"(b) Thirty days after the date on which the claim for the payment under dispute was presented to the public contracting agency by the contractor in writing or in accordance with applicable provisions of the contract."

[6] ORS 279.575(4) provided:

"The public body shall pay to the contractor interest at the rate of one percent per month on the final payment due the contractor, interest to commence 30 days after the work under the contract has been completed and accepted and to run until the date when the final payment is tendered to the contractor. The contractor shall notify the public body when he considers the work complete and the public body shall, within 15 days after receiving the notice, either accept the work or notify the contractor of work yet to be performed on the contract. If the public body does not within the time allowed notify the contractor of work yet to be performed, the interest provided by this subsection shall commence to run 30 days after the end of the 15-day period."

The other findings of the trial judge to which VIP-CO assigns error are supported in the evidence and law.

## LIQUIDATED DAMAGES

The District cross-appeals the trial court's denial of its counterclaim against VIPCO for liquidated damages. The court held the contract was completed within the time contemplated by the parties. The District argues that extensions granted under the terms of the contract postpone the completion only to July 23, 1974, and the contract was not completed until October 8, 1974. It concludes that it is entitled to liquidated damages for the period not covered by agreement.

The District's counterclaim must fail since it was unable to prove that the delayed completion was due solely to the fault of VIPCO rather than to breaches of contract for which it was responsible (late site delivery, defective excavation). Where delay is the result of the owner's breach, performance by the stated date is excused, and the contractor must complete the project within a reasonable time. 13 Am Jur 2d 52, Building and Construction Contracts § 49 (1964). The evidence shows extensions of time were granted covering the two month initial delay, the strike, delay due to excessive November rainfall and certain items of extra work. Other extensions requested and properly noticed by VIPCO for weather-related delays were denied by the District. Consequently, the fact that the District did not consent to any further extensions does not entitle the District to liquidated damages absent a showing that VIPCO is responsible for the delay.

## INDEMNITY CLAIM

The trial judge found the District entitled to indemnity from CH2M for damages awarded VIPCO for the costs of repairing the spalling, the valve vault and the motorcycle club access road.[7] CH2M appeals the latter two awards.

---

[7] The indemnity provision reads in part:

"* * * The ENGINEER will indemnify, save harmless and defend the OWNER * * * from and against all loss, liability, or claims thereof,

## VALVE VAULT

The trial court found that the extra costs in clearing and shoring the valve vault area following mudslides was a consequence of improper design and inspection of Elte's excavation by CH2M. CH2M had a contractual duty to supervise the excavation and assure compliance with the plans. The plans show only a typical detail for excavation which requires a 10 foot bench on all stockpiles. Failure to properly locate and bench the excavated material resulted in slides and extra costs. This is sufficient to support the judgment. *Scott & Payne v. Potomac Ins. Co.,* 217 Or 323, 332, 341 P2d 1083 (1959).

## ACCESS ROAD

The court also found CH2M negligent in specifying construction requirements for the motorcycle club access road and required it to indemnify the District for costs of supplying the base rock needed to make the road usable in the winter. There is ample evidence that such a base course was needed and that CH2M was negligent in failing to provide for it inasmuch as the other access road was designed with this feature.

CH2M contends, however, that, even if it was negligent, the District has sustained no damage because it would have had to pay for a base course anyway. *Gagne v. Bertran,* 43 Cal 2d 481, 275 P2d 15 (1954). In *Gagne,* the defendant negligently took soil samples based on which plaintiff purchased two lots and subsequently decided to erect an apartment complex. The soil structure proved inadequate to support the foundation and major design modifications had to be made. The court found defendant negligent and plaintiff entitled to the difference in value of the lots in actuality and as represented. Defendant offered no evidence as to this difference in value.

---

caused by the sole negligence of the ENGINEER * * * in the performance of his contract."

"The additional costs plaintiffs incurred in the installation of the foundation were not caused by defendant's misinformation, however, but by the physical condition of the land. The true condition was discovered in time to alter the plans, and it does not appear that plaintiffs had to abandon any of their work or to undo any of it and start over. * * * Such damages, had they been suffered, would have resulted directly from defendant's failure to report the truth and would clearly be recoverable. * * *" 43 Cal 2d at 491.

In the present case, there was no evidence of expense incurred beyond what the road would have cost to build correctly. The base course was necessary to make the road usable in all weather and if it had been properly designed in the first place, VIPCO's bid would have included this cost. The District suffered no damage as to the result of CH2M's negligence and the trial court erred in so holding.

## ATTORNEY FEES

Under its contract with the District, CH2M agreed to indemnify the District for any expenses, including attorney fees, resulting from CH2M's "sole negligence." The trial court refused to allow any attorney fees on the ground that no attempt had been made by the District to segregate those fees incurred in defending against claims attributable to CH2M's negligence and VIPCO's other claims.

It is plaintiff's complaint that determines whether there is a duty to defend under the indemnity agreement and the indemnitee (District) bears the burden of establishing that particular claims against it fall within the terms of the agreement. *U. S. Fire Ins. Co. v. Chrysler Motors,* 264 Or 362, 368, 505 P2d 1137 (1973). VIPCO's complaint prays for over $200,000 in damages, nearly 80 percent of which was for delay in furnishing the site and for final payment due under the contract. It is clear that CH2M was not obliged to defend the entire lawsuit and, absent proof of the costs of defending those claims attributable solely to

CH2M's negligence, attorney fees were properly denied.

Affirmed in part; reversed and remanded in part.